# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| Brandon Fresquez,<br><br>         Plaintiff,<br><br>v.<br><br>BNSF Railway Co.,<br><br>         Defendant. | No. 1:17-cv-00844-WYD-MLC<br><br>**PLAINTIFF BRANDON FRESQUEZ'S MOTION TO COMPEL AND FOR SANCTIONS** |



EXHIBIT

A

PENGAD 800-631-6989

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLES OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

BNSF'S FAILURE TO ADEQUATELY PRESERVE, SEARCH, AND TIMELY
PRODUCE ELECTRONICALLY STORED INFORMATION ................................ 1

A.    BNSF's FAILURE TO ADEQUATELY PRESERVE, SUFFICIENTLY SEARCH,
AND TIMELY PRODUCE RELEVANT EMAILS............................................. 2

B.    BNSF's FAILURE TO SEARCH FOR EMAILS............................................... 4

C.    BNSF'S FAILURE TO SEARCH FOR TEXT MESSAGES ............................. 6

BNSF'S DESTRUCTION OF DOCUMENTS......................................................... 7

A.    AKER'S NOTES............................................................................................ 7

B.    CHANGES TO THE TRANSCRIPT ............................................................. 9

BNSF'S OTHER EFFORTS TO FORCE FRESQUEZ TO PREPARE FOR TRIAL BY
AMBUSH............................................................................................................. 12

A.    BNSF'S OTHER FAILURE TO PREPARE ITS CORPORATE DESIGNEE....... 13

B.    BNSF'S REFUSAL TO PRODUCE DOCUMENT DEMONSTRATING THE
SUPPOSED FAIRNESS OF ITS INTERNAL HEARING PROCESS .................... 14

C.    BNSF INSTRUCTING WITNESSES NOT TO ANSWER QUESTIONS AND
REFUSING TO PRODUCE DOCUMENTS REGARDING THE EXTENT OF
THEIR RETALIATORY MOTIVE ..................................................................... 15

BNSF'S OTHER UNTIMELY PRODUCTIONS.................................................... 17

BNSF'S MISUSE OF PRIVILEGE ....................................................................... 18

BNSF'S IMPROPER REFUSAL TO AUTHENTICATE ....................................... 20

BNSF'S PATTERN AND PRACTICE OF ABUSING DISCOVERY ..................... 21

CONCLUSION .................................................................................................... 25

# TABLES OF AUTHORITIES

## CASES

*AF Holdings, LLC v. Patel*, No. 2:12-cv-00262, 2015 U.S. Dist. LEXIS 93524 (N.D. Ga. July 8, 2015) ................................................................................................................................ 20

*Allstate Ins. Co. v. Papanek*, No. 3:15-cv-240, 2018 U.S. Dist. LEXIS 2253 (S.D. Ohio Jan. 5, 2018) .................................................................................................................................. 4

*Anderson v. BNSF Ry.*, 380 Mont. 319, 348-50 (2015) ..................................................... 23-25

*Ast v. BNSF Ry. Co.*, No. 09-cv-2519, 2012 U.S. Dist. LEXIS 9135 (D. Kan. Jan. 26, 2012) ........ ........................................................................................................................................ 21 n. 4

*Banks v. St. Francis Health Ctr., Inc.*, No. 15-cv-2602, 2015 U.S. Dist. LEXIS 157752 (D. Kan. Nov. 23, 2015) ........................................................................................................................ 3

*Barbur v. Railway Co.*, No. 07-cv-096, Order (E.D. Wash. Jul. 3, 2008) ............................ 21 n. 4

*Belyea v. BNSF Railway Co.*, No. 9:10-cv-33, Order (D. Mont. Mar. 26, 2015) .................. 21 n. 4

*Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236 (D.N.M. 2016) ...................................... 8

*Chase v. BNSF*, No. c4-05-1607, 2009 Minn. Dist. LEXIS 329 (Minn. 10th Jud. Dist. Oct. 15, 2009) ............................................................................................................................... 21 n. 4

*Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 186614 (D. Colo. Jan. 12, 2017) .............................................................................................................. 3-4

*Danielson v. BNSF*, CDV-04-124(d) at 15 (Mont. Eighth Jud. Dist. Ct March 13, 2006) ...... 22-23

*DeLeon v. BNSF Railway Co.*, No. 13-0729, Order and Decision (Mont. 13th Jud. Dist. Jan. 30, 2017) ...................................................................................................................................... 23

*Donovan v. BNSF Railway Co.*, No. 02-22, Order and Mem. (Mont. 13th Jud. Dist. Jul. 25, 2008) ........................................................................................................................................ 21 n. 4

*Doug's Word Clocks.Com Pty. Ltd. v. Princess Int'l, Inc.*, No. 16-cv-7322, 2017 U.S. Dist. LEXIS 149282 (S.D.N.Y. Sep. 14, 2017) ................................................................................ 18

*EEOC v. BDO USA, L.L.P.*, 876 F.3d 690 (5th Cir. 2017) ................................................... 19-20

*EEOC v. Dillon Cos.*, 839 F. Supp. 2d 1141 (D. Col. 2011) ...................................................... 12

*EEOC v. JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2017 U.S. Dist. LEXIS 122908 (D. Colo. Aug. 4, 2017) .................................................................................................... 7-9, 9 n. 1

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) ............................................................... 9

*Fisher v. United States*, 425 U.S. 391 (1976) ........................................................................... 19

*Fox v. BNSF Railway Co.*, No. 13-583, Order Denying Def.'s Mot. for a Protective Order and Granting Pl.'s Req. for Rule 37 Sanctions (Mont. 8th Jud. Dist. Mar. 7, 2016) ............... 21 n. 4

*Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 629 (Minn. 2012) ................... 21 n. 4

*Frost v. BNSF Ry. Co.*, No. 15-cv-124, 2017 U.S. Dist. LEXIS 78263 (D. Mont. May 23, 2017) ........................................................................................................................................ 18

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996) .......................... 9

*Hager v. BNSF Railway Co.*, No. 1200429, Not. Of Ruling on Pl.'s Mot to Compel (Cal. 4th Jud. Dist. Aug. 1, 2016) .................................................................................................................. 9

*HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, No. 10-cv-01633-WYD-BNB, 2011 U.S. Dist. LEXIS 147790 (D. Colo. Dec. 21, 2011) ...................................................................... 16

*Helget v. City of Hays, Kansas*, 844 F.3d 1216 (10th Cir. 2017) ................................................ 9

*In re Beam*, No. 2009-cv-104, Order Finding Thomas Beam in Direct Contempt of Ct. (Kan. 13th Jud. Dist. Apr. 15, 2011) .............................................................................................. 21 n. 4

ii

*James v. Heuberger Motors, Inc.*, No. 10-cv-01648-CMA-KLM, 2011 U.S. Dist. LEXIS 11945 (D. Colo. Jan. 28, 2011) ................................................................................................ 16

*Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015) ...................................................... 8, 9 n. 1

*Jones v. Thompson*, 996 F.2d 261 (10th Cir. 1993) .............................................................. 20

*Kowalewski v. BNSF Railway Co.*, No. 27-cv-17-145, Memorandum and Order (Minn. 4th Jud. Dist. Feb. 5, 2018) .............................................................................................. 25

*Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) ......................................................... 8

*Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 U.S. Dist. LEXIS 162989 (D. Colo. Dec. 4, 2015) ............................................................................ 3, 5-6

*Montano v. Gradall Indus.*, No. 03-cv-1554-CB (BNB), 2004 U.S. Dist. LEXIS 31537 (D. Colo. Mar. 29, 2004) .................................................................................................... 14-15

*NLRB v. Interbake Foods, LLC*, 637 F.3d 492 (4th Cir. 2011) ............................................... 19

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .................................................... 16

*Paul v. BNSF Railway Co.*, No. 14-1505 (Neb. 3rd Jud. Dist. Sept. 14, 2017) ................... 21 n. 4

*Paul v. BNSF Railway Co.*, No. 14-1505, Order on Pl.'s Mot. to Compel and for Sanctions (Neb. 3rd Jud. Dist. Aug. 11, 2017) .................................................................................. 22-23

*Perkins v. Hartford Life & Accident Ins. Co.*, No. 11-cv-2557, 2012 U.S. Dist. LEXIS 124786 (D. Kan. Sep. 4, 2012) ............................................................................................. 16

*QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676 (S.D. Fla. 2012) ...................... 12, 14

*Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007) ........................................................... 15-17

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002) ...................... 18

*Richardson v. BNSF Ry. Co.*, No. 13-5415, 2014 U.S. Dist. LEXIS 147985 (E.D. La. Oct. 16, 2014) .................................................................................................................. 21 n. 4

*Schnittgen v. BNSF Railway Co.*, No 13-168, 2014 Mont. Dist. LEXIS 24 (Mont. 8th Jud. Dist. Oct. 9, 2014) ................................................................................................... 21 n. 4

*SEC v. Goldstone*, No. 12-cv-0257, 2016 U.S. Dist. LEXIS 92512 (D.N.M. June 13, 2016) ..... 16

*Sherrill v. BNSF Railway Co.*, No. 13-834, Order (Mont. 8th Jud. Dist. Sept. 20, 2016) ............ 23

*Silliker v. The Burlington Northern and Santa Fe Railway*, No. 04-955, Order Granting Relief (Mont. 13th Jud. Dist. Jan. 27, 2010) ............................................................................. 21 n. 4

*Spotted Horse v. BNSF*, 2015 MT 148, ¶¶ 22-27, 379 Mont. 314, 350 P.3d 52 ..................... 25

*Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524 (D. Kan. 2006) .............. 12-13

*Tilley v. Choate*, 502 F. App'x 760 (10th Cir. 2012) .......................................................... 4, 6

*United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996) ............................................................ 20

*United States v. Ferguson*, No. 3:06-cv-137, 2007 U.S. Dist. LEXIS 87842 (D. Conn. Nov. 30, 2007) .................................................................................................................. 16-17

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ...................................................... 17

*United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) ............................................... 20

*Young v. BNSF Railway Co.*, No. 05-1217, Order Granting Plaintiff's Motion for a New Trial (Mont. 13th Jud. Dist. Aug. 22, 2008) ............................................................................ 21 n. 4

**RULES**

Fed. R. Civ. P. 30(b)(6 ..................................................................................................... 12-13

Fed. R. Civ. P. 30(c)(2) ...................................................................................................... 15

Fed. R. Civ. P.37(c)(1) ....................................................................................................... 13

Fed. R. Evid. 401 ............................................................................................................... 13

## INTRODUCTION

Defendant BNSF Railway Co. has a well-documented history of abusing discovery. Plaintiff Brandon Fresquez therefore began this case by noticing it to a deposition on its search for relevant documents. At an informal hearing on the deposition notice, the magistrate judge told Fresquez that he was disinclined to let him engage in discovery about discovery unless and until Fresquez could a show that BNSF had abused discovery in this case.

That time has now come. Fresquez can prove that BNSF has pulled nearly every trick in the book, including destroying documents, refusing to search for evidence, withholding proof of Fresquez's claims until Fresquez independently discovers them, failing to prepare its corporate representatives for their depositions, and erroneously asserting privilege. The result is that Fresquez has been permanently deprived of important pieces of evidence, had meaningful access to other pieces of information limited, and will have to prepare for trial by ambush.

The Federal Rules of Civil Procedure require that the Court put an end to BNSF's chicanery. This can best be done by ordering BNSF to search for and produce what evidence it has not already destroyed, with fees and costs to Fresquez for his trouble, and an adverse-inference instruction being given to the jury for those pieces that have been destroyed.

## BNSF'S FAILURE TO ADEQUATELY PRESERVE, SEARCH, AND TIMELY PRODUCE ELECTRONICALLY STORED INFORMATION

From day one, Fresquez has shown BNSF that certain of its managers possess relevant emails and text messages; yet, BNSF has failed to search most of its managers' emails and text messages, and the manner in which it has searched its remaining managers' emails and text messages is contrary to any acceptable means of searching for electronically stored information.

BNSF must be ordered to do what it should have initially done, and Fresquez should be awarded fees and costs.

## A. BNSF's FAILURE TO ADEQUATELY PRESERVE, SUFFICIENTLY SEARCH, AND TIMELY PRODUCE RELEVANT EMAILS

For the emails BNSF has produced, BNSF's search and production violates the Federal Rules of Civil Procedure in four ways. First, BNSF did not tell the people searching for relevant emails what this case is about, meaning they simply searched for "Fresquez" and no other relevant terms:

> Q Did you have any understanding as to whether you had to preserve information regarding defects or defect reporting?
>
> A No. I -- I think that the instruction was fairly generic in that regard, saying something like just, you know, preserve anything that involves, you know, this particular employee . . . .
>
> Q Is it fair to say that your search for relevant and responsive documents had to do with things related to Brandon and not necessarily things related to the manner in which defects were being reported in your territory?
>
> A Well, that wasn't the issue, as I understood . . . .
>
> Q So is my statement a fair statement then?
>
> A I'd say it's accurate, but it was because I, again, was not aware of what his -- what his concern was.

(Carpenter Dep. (Dkt. 46-7) at 161:3-62:17; *see also* Boltin Dep. (Dkt. 46-4) at 68:2-11.) Second, BNSF made its managers responsible for searching their own emails, meaning BNSF relied on witnesses who have lied under oath about their violations of federal regulations to search for and produce inculpatory evidence. (*Compare* Paz Dep. (Dkt. 46-14) at 177:5-16; Pl.'s Resp. to Summ. J. (Dkt. 46) at Pl.'s Prop. Fact Nos. 8-9 (demonstrating BNSF making Michael Paz, who has lied under oath about his violations of federal regulations, responsible for searching and producing his own emails).) Third, BNSF ignored Fresquez's August of 2016 preservation

letter for most of its managers and instead waited until shortly before they were deposed to have them search their own emails. (*Compare* Preservation Letter (Ex. A) *and* Botlin Dep. at 68:2-11 and Paz Dep. at 177:5-14 (demonstrating BNSF not telling witnesses to preserve documents until almost a year after it knew they possessed them).) Finally, BNSF heeded Fresquez's August of 2016 preservation letter for a few of its managers and timely told them to search their emails; however, BNSF then withheld the documents from Fresquez unless and until shortly before Fresquez deposed them. (*Compare* Carpenter Dep. at 8:19-21, 163:9 and Miller Dep. (Dkt. 46-3) at 150:14-23 *and* Def.'s Fourth Supp. Discl. (Ex. B) (demonstrating BNSF not producing the emails the witnesses provided to it until nearly after year later, which was days before Fresquez deposed them).)

Concerned especially about BNSF relying on ignorant witnesses determining the scope of its search and the naivety of trusting witnesses who have already been caught perjuring themselves to search for and turn over damning emails, Fresquez asked BNSF to have its information technology department search certain managers' emails for key terms. (Email Chain Between Thompson and Goman (Ex. C) at 7-8.) Fresquez's request is the way in which discovery disputes of this nature are typically resolved. *See, e.g., Crocs, Inc. v. Effervescent, Inc.*, No. 06-cv-00605-PAB-KMT, 2017 U.S. Dist. LEXIS 186614, at *5-11 (D. Colo. Jan. 12, 2017); *see also Banks v. St. Francis Health Ctr., Inc.*, No. 15-cv-2602, 2015 U.S. Dist. LEXIS 157752, at *22-25 (D. Kan. Nov. 23, 2015). Without explanation, BNSF has nevertheless refused to have any independent person search for relevant documents. (Email Chain Between Thompson and Goman at 7-8.)

"To adequately respond to a request for production, the respondent must conduct a reasonable search for responsive documents." *Crocs*, 2017 U.S. Dist. LEXIS 186614, at *5.

"Parties, along with their employees and attorneys, have a duty to act competently, diligently, and ethically with respect to discharging discovery obligations." *Id.* (quoting *Robinson v. City of Arkansas City, Kan.*, No. 10-cv-1431, 2012 U.S. Dist. LEXIS 23806, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012)) (internal quotation marks omitted). "This requires a joint effort to identify all employees likely to have been authors, recipients or custodians of documents responsive to the requests for production." *Id.*

Courts recognize that BNSF's search for relevant documents, which was performed by its employees rather by counsel, is inherently problematic and therefore insufficient. *See, e.g.*, *Allstate Ins. Co. v. Papanek*, No. 3:15-cv-240, 2018 U.S. Dist. LEXIS 2253, at *13 (S.D. Ohio Jan. 5, 2018). Add to this that BNSF also failed to timely inform its employees of their preservation obligations, failed to in any way inform the managers it made responsible for searching their own emails about this case so that they could possibly search for all relevant documents, and failed to timely produce what relevant documents its managers did provide to it, and BNSF's conduct rises to a level that the Tenth Circuit has recognized can necessitate judgment being entered against a party. *See, e.g.*, *Tilley v. Choate*, 502 F. App'x 760, 763 (10th Cir. 2012). It stands to reason then that Fresquez's requested sanction—the BNSF be compelled to have an independent person search certain managers' emails for agreed upon terms and to reimburse Fresquez for the fees and costs he has incurred in connection with this motion—is more than reasonable.

## B.  BNSF's FAILURE TO SEARCH FOR EMAILS

Regarding BNSF's above-discussed method of search and production for a few of its managers' emails, as deficient as it may be, it is better than what BNSF has done for documents possessed by its other managers. Indeed, BNSF has done nothing to search for and timely

produce relevant documents possessed by at least seven of the managers who have been deposed in this case. (Def.'s Fourth Supp. Discl. at 9-10 (identifying neither Ryan Akers, Cason Cole, David Dunn, Damon Fry, Ned Percival, Doreen Powers, nor Thomas Royston as a witness for whom BNSF has searched and produced relevant documents). As this Court recently recognized, such effort (or lack thereof) does not comport with the principles of discovery and is therefore sanction worthy. *See*, *e.g.*, *Meeker v. Life Care Ctrs. of Am., Inc.*, No. 14-cv-02101-WYD-NYW, 2015 U.S. Dist. LEXIS 162989, at *15 (D. Colo. Dec. 4, 2015).

BNSF may defend its failure to search the emails of Akers, Cole, Dunn, Fry, Percival, Powers, or Royston by arguing that their emails are unlikely to contain relevant documents. But the record demonstrates the exact opposite to be true. (*See*, *e.g.*, Dunn Dep. (Dkt. 46-2) at 16:8-13 (testifying that track inspectors send their defect reports to him via email); Fry Dep. (Dkt. 46-15) at 19:16-24 (testifying that he received emails about defects disappearing from the system BNSF uses to track defects)). Indeed, it is difficult to fathom how BNSF could defend not searching these managers' emails when Fresquez has otherwise obtained and produced relevant emails from them. (*See*, *e.g.*, Emails Between Royston and Fresquez (Dkt. 46-40).)

While it is usually the burden of the party seeking a further production of documents to prove that that the original production is deficient, the Court treats a motion to compel that is brought against a party that has refused to engage in a search of its emails like a motion for a protective order that was filed by the party that has refused to engage in the search. *See*, *e.g.*, *Meeker*, 2015 U.S. Dist. LEXIS 162989, at *9. In other words, to the extent BNSF defends its failure to search by arguing that the search would be unduly burdensome, it must produce evidence of the burden involved. *Id.* It is a showing BNSF cannot make, so much so that BNSF

should be ordered not only to perform the search but also to reimburse Fresquez for the fees and costs he has incurred in connection with this motion. *See, e.g., Tilley*, 502 F. App'x at 763.

## C. BNSF'S FAILURE TO SEARCH FOR TEXT MESSAGES

In June of 2017, Fresquez produced relevant text messages between him and over twenty witnesses, five of whom are BNSF managers. (Excerpts of Fresquez's Text Messages (Ex. D).) Fresquez has also produced the relevant text messages between BNSF managers that he has been able to independently obtain. (Dunn and Paz Text Messages (Ex.E).) And BNSF's managers have testified that they sent and received relevant communications to one another via text message. (Dunn Dep. at 16:8-13.)

Nevertheless, BNSF waited until the day before Fresquez deposed Paz, which was in November of 2017, to produce any text messages. (Def.'s Seventh Supp. Discl. (Ex. F). And even then, BNSF merely produced the text messages Fresquez exchanged with Paz, which Fresquez had already produced to it. (*Compare Id. and* Excerpts of Fresquez's Text Messages.) BNSF has not searched for (much less produced) any other text messages. (*Compare* Def.'s Eleventh Supp. Discl. (Ex. G) *and* Dunn Dep. at 115:15-18.)

As discussed *supra* at 5, BNSF's refusal to search its employees' phones for relevant text messages causes the burden to be on BNSF, and what BNSF must show is that it would have been unduly burdensome for it to conduct the search. (citing *Meeker*, 2015 U.S. Dist. LEXIS 162989, at *9). Given the ease with which text messages can be searched and produced, it is a burden BNSF cannot even come close to meeting. This Court should therefore order BNSF not only to search for relevant text messages but also to reimburse Fresquez for the fees and costs he has incurred in connection with this motion. *See, e.g., Tilley*, 502 F. App'x at 763.

## BNSF'S DESTRUCTION OF DOCUMENTS

The above-described discovery abuses violate the Federal Rules of Civil Procedure not only because they temporarily deprive opposing parties of information but also because they can result in the permanent destruction of evidence. Indeed, that is exactly what has happened here for at least two pieces of evidence. The prejudice to Fresquez that has been caused by such destruction necessitates not only fees and costs being awarded to him but also an adverse-inference instruction being read to the jury.

### A. AKER'S NOTES

Fresquez has alleged that Carpenter and Paz drummed up a reason to terminate him in retaliation for his objecting to their and two other manager's circumvention of the FRA's defect-reporting regulations. (Pl.'s Resp. to Def. Mot. for Summ. J. (Dkt. 46) at 34-40.) Perhaps the best evidence of such circumvention is an email from one of the managers—Akers—to a subordinate, in which Akers ordered that thirty-five defects be reported as repaired. (Emails Between Royston and Fresquez.) Fresquez has evidence that the defects, in fact, were not repaired. (Pl.'s Resp. to Def. Mot. for Summ. J. at Fresquez Prop Facts Nos. 3, 5.)

At his deposition, Akers refuted Fresquez's evidence by referring to paperwork that he claims demonstrated that the repairs had been made. (Akers Dep. (Ex. H) at 72:16-73:11, 82:6-84:2.) The word "demonstrate" in the forgoing sentence is past tense because BNSF did not tell Akers that he was obligated to preserve relevant documents, and Akers therefore destroyed the documents sometime after when Fresquez had not only filed this case with OSHA but also sent a preservation letter to BNSF. (Compare *Id.* and Preservation Letter.)

"Spoliation occurs when a party loses or destroys evidence that it had a duty to preserve because it was relevant to proof of an issue at trial in current or anticipated litigation." *EEOC v.*

*JBS USA, LLC*, No. 10-cv-02103-PAB-KLM, 2017 U.S. Dist. LEXIS 122908, at *41 (D. Colo. Aug. 4, 2017). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Id.* (quoting *Browder v. City of Albuquerque*, 209 F. Supp. 3d 1236, 1243 (D.N.M. 2016)) (internal quotation marks omitted). "A spoliation sanction is proper where: (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *JBS*, 2017 U.S. Dist. LEXIS 122908, at *42 (quoting *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015)) (internal quotation marks omitted).

Here, BNSF inarguably had a burden to preserve the documents. As this Court has recognized, the obligation to preserve evidence arises when a party has notice that the evidence is relevant to litigation. *JBS*, 2017 U.S. Dist. LEXIS 122908, at *42-43 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). And before the documents were destroyed, BNSF received both a preservation letter and a copy of the administrative complaint, the latter of which identified Akers by name and alleged that Akers "was ordering employees to report defects as having been repaired despite no repairs having been made." (Preservation Letter, ¶ 11 of the Administrative Complaint).

At the same time, Fresquez has inarguably been prejudiced. The documents make it more or less probable that BNSF was circumventing the FRA's defect-reporting regulations, which makes it more or less probable that Carpenter and Paz had motive to retaliate against Fresquez. *See* Fed. R. Evid. 401. And BNSF's destruction of the documents causes Fresquez to be unable to investigate whether Akers really had documents that proved Carpenter and Paz were not circumventing the FRA's defect-reporting regulations.

The question then is not whether BNSF should be sanctioned; rather, it is what sanction best remedies BNSF's destruction of the documents. "In determining the appropriate sanction, courts consider factors that include (1) the degree of actual prejudice to the [party]; (2) the amount of interference with the judicial process; [and] (3) the culpability of the litigant." *JBS*, 2017 U.S. Dist. LEXIS 122908, at *48 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 101 (D. Colo. 1996) (quoting *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992))) (internal quotation marks omitted) (substitution in *JBS*).

Though BNSF's destruction of the documents could constitute the bad faith necessary to justify an adverse-inference instruction,[1] Fresquez asks only that BNSF not be allowed to rebut his assertion that the thirty-five defects Akers had marked as repaired were not, in fact, repaired. Such sanction can be imposed pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure and the Court's inherent powers as to spoliation. *See, e.g.*, *JBS*, 2017 U.S. Dist. LEXIS 122908, at *50 (citing *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1225-26 (10th Cir. 2017)). And it is the sanction that best remedies the prejudice BNSF has caused Fresquez to suffer. *See, e.g.*, *JBS*, 2017 U.S. Dist. LEXIS 122908, at *50-51.

## B. CHANGES TO THE TRANSCRIPT

BNSF has defended itself from Fresquez's allegations of retaliation by arguing that two disinterested managers were responsible for reviewing the transcript from Fresquez's internal hearing and making the discipline decision based on such review. (BNSF's Mot. for Summ. J. (Dkt 39) at 8-10.) To support that the two managers could have legitimately believed Fresquez was insubordinate, BNSF has demonstrated that the transcript from Fresquez's internal hearing

---

[1] "The entry of default judgment or the imposition of adverse inferences require a showing of bad faith." *JBS*, 2017 U.S. Dist. LEXIS 122908, at *48 (quoting *Jones*, 809 F.3d at 580) (internal quotation marks omitted).

includes the transcription of an audio recording that was played during the hearing, in which Fresquez can be heard saying the following:

> Nah, you guys already made your decision. You got a Foreman there, and you guys have made your decision, so. . . . No, you guys already made your decision, uh, I don't see the, the point of string-lining something when you've already made your decision with the Foreman. . . . My final opinion is it's, uh, kind of pointless to string-line something if you've already made your decision. . . . I didn't say no.

(Pl.'s Resp. to Def. Mot. for Summ.. J. at Def.'s Prop. Fact No. 54.) BNSF's argument ignores that in the actual audio recording Fresquez does not say "Nah, you guys already made your decision" and instead says "ah, you guys already made your decision," and Fresquez does not say "No, you guys already made your decision" and instead pauses and then says "you guys already made your decision." (*Id.*)

The foregoing raises the question: How did "ah" and a silent pause get transcribed in the internal hearing transcript as "Nah" and "No," respectively? While a third party—Acutrans— transcribed the internal hearing, the hearing officer—Percival—was responsible for reviewing what Acutrans transcribed and could recommend changes as he saw fit. (Pl.'s Resp. to Def. Mot. for Summ. J. at Def.'s Prop. Fact No. 54.) Given Percival was caught conspiring with Carpenter and Paz to ensure Fresquez's internal hearing resulted in Fresquez's termination, Fresquez requested the documents that will show what changes Percival made from BNSF, then subpoenaed them from Acutrans, and then noticed BNSF to a deposition on what changes Percival made. (*Compare Id.* at Resp. to Def.'s Prop. Fact No. 51 *and* Def.'s Resp. to Pl.'s Req. for Prod. (Ex. I); Subpoena (Ex. J), and 30(b)(6) Notice (Ex. K).)

Regarding Fresquez's requests for production, BNSF's search for relevant electronically stored information has consisted only of it waiting until shortly before a manager's deposition and then telling him or her to search his or her emails for documents about Fresquez. (Boltin

Dep. at 65:17-66:15, 67:1-22; Carpenter Dep. at 160:19-62:21; Dunn Dep. at 115:4-17:14; Miller

Dep. at 148:20-50:23.) For managers like Akers, Fry, and Percival, each of whom left the

company before he was deposed, BNSF has never searched their emails. (Percival Dep. (Ex. L)

at 25:6-10.) Accordingly, the documents that will show what changes were made to the internal

hearing transcript have not been produced. (Def.'s Eleventh Supp. Discl.)

Concerning Fresquez's subpoena to Acutrans, BNSF not only ended its contract with

Acutrans but also ordered it to destroy all documents, including those that were relevant to this

and other cases. (Letter from BNSF to Acutrans (Ex. M).) Acutrans understandably did as its

customer instructed. (*Id.*) Consequently, Acutrans could not produce the documents that would

have shown what changes Percival made to the internal hearing transcript. (*Id.*)

Finally, about the 30(b)(6) deposition, BNSF produced a corporate representative on the

topic who did not know he was the corporate deponent for the topic until the morning of his

deposition. (Percival Dep. at 4:22-5:16.) Accordingly, the corporate representative had neither

reviewed the documents he needed to review nor communicated with the witnesses with whom

he needed to communicate to answer Fresquez's questions. *Id.* When asked whether and what

changes Percival made to the internal hearing transcript, the corporate representative could

therefore say only that he did not know what changes had been made. *Id.*

BNSF's above-described destruction of evidence violates the Federal Rules of Civil

Procedure. At the end of the day, BNSF cannot deny that it ordered Acutrans to destroy the

documents showing what changes Percival made to the internal hearing transcript after it had not

only received a preservation letter and the administrative complaint but also a copy of the

requests for production Fresquez intended to serve on it.[2] (Email from Doyle to Balanon, and Preservation Letter.) And ordering a vendor to destroy documents two months after being informed that they are relevant constitutes the bad faith necessary to warrant instructing the jury that they should infer from the documents' destruction that the documents would have shown that Percival made the at-issue changes. *See*, *e.g.*, *EEOC v. Dillon Cos.*, 839 F. Supp. 2d 1141, 1145 (D. Col. 2011).

BNSF's above-described failure to prepare its corporate designee also violates the Federal Rules of Civil Procedure. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, BNSF had an obligation to "testify about information known or reasonably available to the organization." Given that its representative testified that he did not know whether changes had been made to the transcript, BNSF is stuck with this answer and should be prohibited from offering evidence rebutting Fresquez's allegation that Percival is responsible for the discrepancy between the audio recording and the internal hearing transcript (regardless of whether its violations of the Federal Rules of Civil Procedure was in bad faith). *See*, *e.g.*, *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *see also QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 690 (S.D. Fla. 2012) (prohibiting a corporation from offering evidence for a topic on which its corporate designee claimed a lack of knowledge).

## BNSF'S OTHER EFFORTS TO FORCE FRESQUEZ TO PREPARE FOR TRIAL BY AMBUSH

---

[2] Fresquez served his discovery requests on BNSF in the administrative forum even though he intended to remove the case to federal court. (Email from Doyle to Balanon (Ex. X).) He made clear when serving them that BNSF did not need to respond while the case was still in the administrative forum and that he was "serv[ing] the notice on BNSF only so that [it] had time to gather the responsive documents for the subsequent federal case and so that chances of spoliation were minimized[.]" (*Id.* at 2.) Less than two months later, BNSF ordered Acutrans to destroy the documents that showed the changes BNSF made to the internal hearing transcript. (Letter from BNSF to Acutrans.)

The above-described discovery abuses are not the only way in which BNSF has sought to
force Fresquez to prepare for trial by ambush. It has also failed to prepare another corporate
designee, cherry picked what evidence it produces, impermissibly instructed witnesses not to
answer, and withheld documents until long after they should have been produce. Like its other
discovery abuses, each of these is sanctionable in and of itself, much less when taken together.

## A. BNSF'S OTHER FAILURE TO PREPARE ITS CORPORATE DESIGNEE

BNSF has responded to Fresquez allegation—that it was removing defects reports from
the system it uses to track the reporting and repair of defects—by claiming that any deleted
defect reports resulted from a glitch in the system and not any misconduct on the part of
Carpenter and Paz. (*Compare* Pl.'s Resp. to Def.'s Mot. for Summ. J. at Pl.'s Prop. Fact Nos. 3,
5 *and* Fry Dep. at 19:16-24.) When Fresquez deposed BNSF on the supposed glitch, however,
the corporate designee testified that he did not know he was the corporate representative for the
topic until the day of his deposition. (Royston Dep. (Ex. N) at 29:23-35:11.) Accordingly, he had
neither reviewed the documents he would have needed to review nor communicated with the
people with whom he would have needed to communicate to testify to the cause of the supposed
glitch, when the supposed glitch first appeared, or what efforts BNSF made to correct the glitch.
(*Id.*)

As discussed *supra* at 12, Rule 30(b)(6) of the Federal Rules of Civil Procedure's plain
language obligated BNSF to prepare the deponent to answer Fresquez's questions. *See also*
*Sprint*, 236 F.R.D. at 528. BNSF's failure to do so has prevented Fresquez from being able to
rebut its claim that a system error and not any misconduct was responsible for defect reports
disappearing from its defect-tracking system. Because trial by ambush prevents the just

resolution of claims, BNSF should therefore be prohibited from offering evidence of the supposed glitch. *See*, *e.g.*, *QBE*, 277 F.R.D. at 690.

## B. BNSF'S REFUSAL TO PRODUCE DOCUMENT DEMONSTRATING THE SUPPOSED FAIRNESS OF ITS INTERNAL HEARING PROCESS

As it does in every case, BNSF uses the insulation its internal hearing process creates between the plaintiff and the decision makers to argue that it could not have retaliated against the plaintiff. (BNSF's Mot. for Summ.. J. at 8-10.) To prove the internal hearing process is a farce, Fresquez has both requested the documents that will identify the frequency with which internal hearings result in the charged employee's exoneration and asked BNSF's witnesses whether they are personally aware of any hearing that has resulted in the same. (Def.'s Resp. to Pl.'s Req. for Prod. at Req. No. 10; Boltin Dep. at 37:18-22.) Though BNSF has refused to produce the requested documents, its witnesses have testified that they cannot not identify any employee who has actually been exonerated. (*Id.*)

Fresquez has agreed to forgo filing a motion to compel the withheld documents but asked BNSF to either agree that it will not try to rehabilitate the supposed fairness of its internal hearing process by identifying any employees who were actually exonerated or produce the relevant documents for those exonerated employees it intends to identify. (Email Chain Between Thompson and Goman at 7.) BNSF has refused to either forgo defending the fairness of its internal hearing process by identifying exonerated employees or produce the documents regarding such employees' hearings. (*Id.* at 4.) In other words, BNSF wants to have its cake and eat it too, offering evidence of the hearing process's supposed fairness and withholding the evidence that will show whether it is actually fair. (*Id.*)

As this Court has recognized in an analogous situation, Fresquez faces the possibility of trial by ambush because BNSF may offer at trial surprise evidence of the supposed fairness of its

14

internal hearing process that it has prevented Fresquez from exploring and testing in discovery. *See*, *e.g.*, *Montano v. Gradall Indus.*, No. 03-cv-1554-CB (BNB), 2004 U.S. Dist. LEXIS 31537, at *30 (D. Colo. Mar. 29, 2004). In that analogous situation, the Court found that the prejudice caused could be cured only by what would be tantamount in this case to the Court preclusively determining that BNSF's internal hearing process is a pro forma means to assign blame. *Id.* Yet, Fresquez continues to request only that BNSF not be able identify individual employees who have been exonerated without first producing the documents regarding their hearings to him so that he can explore the basis for such exoneration.

## C. BNSF INSTRUCTING WITNESSES NOT TO ANSWER QUESTIONS AND REFUSING TO PRODUCE DOCUMENTS REGARDING THE EXTENT OF THEIR RETALIATORY MOTIVE

BNSF compensates its managers based, in part, on the velocity of trains over their territory, and the conduct Fresquez opposed—circumvention of the FRA's defect-reporting regulations—increases this measure, *i.e.*, Carpenter and the managers under him had a financial incentive to retaliate against Fresquez. (Pl.'s Resp. to Summ. J. at Pl.'s Prop. Fact No. 13.) BNSF has thwarted Fresquez's efforts to discover the extent to which BNSF incentivized such retaliation both by refusing to produce the documents that demonstrate the manner in which velocity affected their compensation and by instructing witnesses not to answer questions about the same. (Def.'s Resp. to Pl.'s Req. for Prod. at Req. No. 5; Carpenter Dep. at 127:6-17.) Neither is allowed, and both are sanctionable.

Regarding BNSF instructing witnesses not to answer, Rule 30(c)(2) of the Federal Rules of Civil Procedure allows an attorney to "instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Since no limitation has been ordered in this case, BNSF was allowed to prevent a

deponent from answering a question only by (1) asserting privilege and instructing the deponent

not to answer, or (2) halting the deposition and moving for a protective order. *See, e.g., Redwood*

*v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007). Importantly, BNSF was not allowed to instruct

a deponent not to answer without first asserting privilege, even if the deponent was being asked

harassing questions. *Id.*

Even were BNSF allowed to instruct a deponent not to answer what it deems irrelevant

questions, the instruction not to answer, as well as the withholding of documents, would have

still been improper. Relevancy is "construed broadly to encompass any matter that bears on, or

that reasonably could lead to other matter that could bear on, any issue that is or may be in the

case," and BNSF has burden to show exactly why Fresquez's discovery requests are improper.

*HealthONE of Denver, Inc. v. UnitedHealth Grp., Inc.*, No. 10-cv-01633-WYD-BNB, 2011 U.S.

Dist. LEXIS 147790, at *6-7 (D. Colo. Dec. 21, 2011) (quoting *Oppenheimer Fund, Inc. v.*

*Sanders*, 437 U.S. 340, 351 (1978)) (internal quotation marks omitted). It is a burden BNSF

cannot meet.

Courts in this circuit have found that protective orders are sufficient to protect

employees' privacy interests in their personnel files, which necessarily include documents

concerning their compensation, and that their personnel files are therefore discoverable. *See, e.g.,*

*James v. Heuberger Motors, Inc.*, No. 10-cv-01648-CMA-KLM, 2011 U.S. Dist. LEXIS 11945,

at *12-13 (D. Colo. Jan. 28, 2011). Courts in this circuit have also recognized that compensation

is relevant to show bias. *See, e.g., Perkins v. Hartford Life & Accident Ins. Co.*, No. 11-cv-2557,

2012 U.S. Dist. LEXIS 124786, at *8 (D. Kan. Sep. 4, 2012). Finally, courts in this circuit have

found that information sought about compensation like the compensation at issue in this case is

relevant to motive. *See, e.g., SEC v. Goldstone*, No. 12-cv-0257, 2016 U.S. Dist. LEXIS 92512,

at *51 (D.N.M. June 13, 2016) (citing *United States v. Ferguson*, No. 3:06-cv-137, 2007 U.S.

Dist. LEXIS 87842, at *3-7 (D. Conn. Nov. 30, 2007) (citing *United States v. Quattrone*, 441

F.3d 153, 186 (2d Cir. 2006))).

Given that it was improper for BNSF to instruct its witnesses not to answer regardless of

relevance, as well as the sought after information clearly being relevant, BNSF's instruction not

to answer and refusal to produce the documents warrant sanctions. *See*, *e.g.*, *Redwood*, 476 F.3d

at 467-68. Specifically, BNSF should be ordered to not only produce the documents but also to

reproduce the witnesses to answer Fresquez's questions, and Fresquez should be reimbursed for

the fees and costs he has and will incur as a result. *Id.*

## BNSF'S OTHER UNTIMELY PRODUCTIONS

Regarding the important documents BNSF has not destroyed or withheld, it has produced

them only after Fresquez has independently proved their existence. For example, BNSF

evaluates and ranks its managers based, in part, on velocity, which managers can inflate by

circumventing the FRA's defect-reporting regulations. (Carpenter's PMP (Ex. O) at 5; Def.'s

Produced Scorecard (Ex. P).) Though the evaluations and rankings of Carpenter and the

supervisors under him who were also circumventing the FRA's defect-reporting regulations are

relevant and responsive to Fresquez's requests for production, BNSF did not produce them until

months after they were due, and it did so then only because a witness testified to his evaluation

and because Fresquez's undersigned counsel independently obtained and produced the rankings

in another case. (*Compare* Def.'s Resp. to Pl.'s Req. for Prod. at Req. No. 6, Def.'s Fifth Supp.

Discl. (Ex. Q), and Def.'s Sixth Supp. Discl. (Ex. R) *and* Miller Dep. at 48:18-52:1 and *Frost v.

BNSF Ry. Co.*, No. 15-cv-124, 2017 U.S. Dist. LEXIS 78263, at *10-14 (D. Mont. May 23,

2017).)

17

Where a party fails to timely disclose what it was required to produce, the "moving party bears the burden of showing that its adversary failed timely to disclose information required by Rule 26." *Doug's Word Clocks.Com Pty. Ltd. v. Princess Int'l, Inc.*, No. 16-cv-7322, 2017 U.S. Dist. LEXIS 149282, at *10 (S.D.N.Y. Sep. 14, 2017). "To satisfy this burden, the moving party must demonstrate: (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find it would support that claim or defense." *Id.* (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)) (internal quotation marks omitted). Given BNSF waited until just after Fresquez independently discovered the documents to produce them, it is a burden Fresquez can easily meet.

The question then is what sanction is necessary to force BNSF to do what is required by the Federal Rules of Civil Procedure. While fees and costs are likely sufficient to remedy the prejudice caused to Fresquez by BNSF's failure to timely produce the scorecard and rankings in this case, that is unlikely to stop BNSF from continuing to engage in this type of conduct going forward. Indeed, BNSF has continued its pattern and practice of abusing discovery despite receiving significantly harsher sanctions for such conduct in other cases. (*Infra* at 21-25.)

### BNSF'S MISUSE OF PRIVILEGE

BNSF's law department reviews the internal hearing transcript from every case in which there is an allegation of retaliation. (Detlefsen Dep. (Dkt. 46-8) at 18:25-23:21.) But the law department has never advised that the law requires that discipline not be imposed, which is virtually impossible were it reviewing the transcript to offer legal guidance. (*Id.*) At the same time, BNSF has withheld hundreds of relevant documents on the basis of privilege, without so

much as providing the information from which Fresquez can divine whether BNSF's law
department was truly offering legal advice, was instead offering business advice, or was simply
copied on the email. (Def.'s Eleventh Supp. Discl. at 12-14.) And when Fresquez asked BNSF's
witness questions that would have helped him so divine, BNSF instructed her not to answer.
(Detlefsen Dep. at 18:25-23:21.)

"The attorney-client privilege limits the normally broad disclosure requirements of
Federal Rule of Civil Procedure 26 . . . ." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th
Cir. 2017). "For a communication to be protected under the privilege, the proponent must prove:
(1) that he made a **confidential** communication; (2) to a lawyer or his subordinate; (3) for the
primary purpose of securing either a legal opinion or legal services, or assistance in some legal
proceeding." *BDO USA*, 876 F.3d at 695 ((emphasis in *BDO USA*). "Because the attorney-client
privilege has the effect of withholding relevant information from the fact-finder, it is interpreted
narrowly so as to appl[y] only where necessary to achieve its purpose." *Id.* (quoting *Fisher v.
United States*, 425 U.S. 391, 403 (1976)) (internal quotation marks omitted) (substitution in *BDO
USA*).

Importantly, "[t]here is no presumption that a company's communications with counsel
are privileged." *BDO USA*, 876 F.3d at 696 (citing, *inter alia*, *NLRB v. Interbake Foods, LLC*,
637 F.3d 492, 502 (4th Cir. 2011) ("[I]t is true...that the attorney-client privilege does not apply
simply because documents were sent to an attorney")). For example, neither communication by a
corporation with its attorney, who at the time is acting solely in his capacity as a business
advisor, nor documents sent from one corporate officer to another, on which counsel is merely
copied, are privileged. *See, e.g.*, *BDO USA*, 876 F.3d at 696. Thus, courts "simply describing a
lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the

proponent's burden of establishing attorney-client privilege." *BDO USA*, 876 F.3d at 696 (citing *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it **is** the conclusion.") (emphasis in original)).

As discussed above, BNSF's privilege log does not indicate anything more than this conclusion, and BNSF prevented its witness from testifying to more. Fresquez therefore requests that the Court review BNSF3165-491, 3270-74, 3287-88, 3309-10, 3318-19, 3335-53 in camera, and BNSF be compelled to produce those documents that are not actually privileged..

## BNSF'S IMPROPER REFUSAL TO AUTHENTICATE

Finally, BNSF has sought to prevent Fresquez from being able to use the relevant documents he has been able to independently discover. For example, Fresquez obtained and produced copies of the PowerPoint BNSF uses to train its mangers on the law at issue in this case. (PowerPoint (Dkt. 46-9) *and* Def.'s Resp. to Pl.'s Second Set of Req. for Admissions (Ex. S).) Though BNSF was ordered to produce the PowerPoint in another case, as is obvious from the watermark BNSF puts in the middle of every document it produces, and therefore knows full well the PowerPoint is authentic, BNSF has attempted to prevent Fresquez from using it by refusing to admit it is authentic. (*Id.*)

"The Federal Rules of Civil Procedure supply a district court with ample tools to deal with a recalcitrant litigant." *AF Holdings, LLC v. Patel*, No. 2:12-cv-00262, 2015 U.S. Dist. LEXIS 93524, at *21 (N.D. Ga. July 8, 2015) (quoting *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)) (internal quotation marks omitted). Courts recognize that sanctionable recalcitrance includes unreasonably refusing to stipulate or admit authenticity. *See*, *e.g.*, *AF Holdings*, 2015 U.S. Dist. LEXIS 93524, at *24-25. Because BNSF unreasonable refused to

authenticate the documents, the Court should find that the documents are authentic and order

BNSF to reimburse Fresquez for the fees and costs he has incurred in connection with this

motion.

**BNSF'S PATTERN AND PRACTICE OF ABUSING DISCOVERY**

It is common knowledge among attorneys who litigate cases against BNSF that the

above-discussed discovery abuses are part of BNSF's pattern and practice of abusing discovery.[3]

(Thompson Dec. (Ex. T), ¶ 2.) But the Court need not base its ruling on the word of these

attorneys. A significant number of courts have found that BNSF's practice is to withhold

evidence until the eve of trial, dump documents without indexes, raise overbroad boilerplate

objections, file for protective orders solely to prevent witnesses from being deposed, tamper

with evidence, and fabricate evidence.[4]

---

[3] Fresquez's undersigned counsel has never included a section like this in any brief involving a defendant other than BNSF. (Thompson Dec., ¶¶ 2-4.) He is compelled to do so in this case not only because of what is common knowledge about BNSF's litigation tactics but also because of his personal experiences with BNSF abusing the discovery process. (*Id.*)

[4] For brevity's sake, this brief includes only three examples of BNSF abusing discovery. Over the last decade alone, BNSF has been sanctioned time and time again for abusing discovery. *See, e.g.*, *Hager v. BNSF Railway Co.*, No. 1200429, Not. Of Ruling on Pl.'s Mot to Compel (Cal. 4th Jud. Dist. Aug. 1, 2016) (Dkt. 46-24) (sanctioning BNSF for failing to meaningfully answer discovery requests); *Fox v. BNSF Railway Co.*, No. 13-583, Order Denying Def.'s Mot. for a Protective Order and Granting Pl.'s Req. for Rule 37 Sanctions (Mont. 8th Jud. Dist. Mar. 7, 2016) (Ex. U) (sanctioning BNSF for moving for a protective order regarding the plaintiff trying to take a deposition similar to the deposition Neylon is trying to take); *Belyea v. BNSF Railway Co.*, No. 9:10-cv-33, Order (D. Mont. Mar. 26, 2015) (Dkt. 46-25) (sanctioning BNSF for using boilerplate objections and dumping documents without an index); *Richardson v. BNSF Ry. Co.*, No. 13-5415, 2014 U.S. Dist. LEXIS 147985 (E.D. La. Oct. 16, 2014) (sanctioning BNSF for unilaterally cancelling properly noticed depositions); *Schnittgen v. BNSF Railway Co.*, No 13-168, 2014 Mont. Dist. LEXIS 24 (Mont. 8th Jud. Dist. Oct. 9, 2014) (sanctioning BNSF for pleading meritless defenses); *Frazier v. Burlington N. Santa Fe Corp.*, 811 N.W.2d 618, 629 (Minn. 2012) (affirming sanctions against BNSF for destroying evidence); *Ast v. BNSF Ry. Co.*, No. 09-cv-2519, 2012 U.S. Dist. LEXIS 9135 (D. Kan. Jan. 26, 2012) (BNSF acquiescing to plaintiff's requested sanction for using documents it had not produced when trying to exclude the

For example, in *Paul v. BNSF Railway Co.*, No. 14-1505, Order on Pl.'s Mot. to Compel and for Sanctions (Neb. 3rd Jud. Dist. Aug. 11, 2017) (Dkt. 46-22), BNSF not only withheld evidence that corroborated the plaintiff's testimony but also then had the audacity to argue that the plaintiff's expert should be excluded because he did not have the evidence it was withholding! After the plaintiff obtained the hidden documents by other means, which resulted in the court confronting BNSF about its dishonesty, BNSF claimed that it did not consider the evidence responsive to any of the plaintiff's discovery requests, which the court found strained credulity. (Id.) Accordingly, the court sanctioned BNSF by entering judgment against it on liability. (Id.)

As another example, in *DeLeon v. BNSF Railway Co.*, No. 13-0729, Order and Decision (Mont. 13th Jud. Dist. Jan. 30, 2017) (Dkt. 46-23), BNSF was withholding documents unless and until the plaintiff independently discovered them, at which point it would produce them "mere

---

plaintiff's expert); *In re Beam*, No. 2009-cv-104, Order Finding Thomas Beam in Direct Contempt of Ct. (Kan. 13th Jud. Dist. Apr. 15, 2011) (Ex. V) (holding BNSF's counsel in contempt for introducing excluded evidence and otherwise making inappropriate comments to the jury); *Silliker v. The Burlington Northern and Santa Fe Railway*, No. 04-955, Order Granting Relief (Mont. 13th Jud. Dist. Jan. 27, 2010) (Dkt. 46-28) (entering judgment against BNSF for liability and striking BNSF's contributory negligence defense as a sanction against BNSF for destroying evidence); *Chase v. BNSF*, No. c4-05-1607, 2009 Minn. Dist. LEXIS 329 (Minn. 10th Jud. Dist. Oct. 15, 2009) (awarding $4,180.398.90 in sanctions against BNSF for concealing some evidence until it became advantageous to BNSF to use it, permanently withholding other evidence, and even destroying some evidence); *Young v. BNSF Railway Co.*, No. 05-1217, Order Granting Plaintiff's Motion for a New Trial (Mont. 13th Jud. Dist. Aug. 22, 2008) (Dkt. 46-30) (ordering a new trial against BNSF for refusing to produce documents that the plaintiff independently discovered after trial); *Donovan v. BNSF Railway Co.*, No. 02-22, Order and Mem. (Mont. 13th Jud. Dist. Jul. 25, 2008) (Dkt. 46-31) (vacating a jury verdict and reopening discovery due to BNSF' failure to produce relevant documents until the plaintiff was independently able to prove their existence); *Barbur v. Railway Co.*, No. 07-cv-096, Order (E.D. Wash. Jul. 3, 2008) (Dkt. 46-32) (sanctioning BNSF for destroying evidence). Indeed, even the forgoing list of cases is likely they tip of the iceberg as BNSF can only be sanctioned after first having been caught, sanction orders are rarely reported, and BNSF tries to further reduce the chances of such orders being reported by offering to pay the plaintiffs to withdraw their already-granted motions. *See, e.g.*, *Paul v. BNSF Railway Co.*, No. 14-1505 (Neb. 3rd Jud. Dist. Sept. 14, 2017) (Dkt. 46-33) Transcription of Proceedings.

hours later." This was, the court found, just an example of BNSF's "continual troubling
discovery abuses." (Id.) Accordingly, the court sanctioned BNSF by striking BNSF's defenses
against liability and awarding $25,000 in fees and costs to the plaintiff. (Id.)

As a third example, in *Sherrill v. BNSF Railway Co.*, No. 13-834, Order (Mont. 8th Jud.
Dist. Sept. 20, 2016) (Dkt. 46-21), BNSF used boilerplate objections and improperly interpreted
the plaintiff's discovery requests so as to prevent the plaintiff from discovering a survey it had
done on the safeness of his job, all the while arguing that the plaintiff's job was safe because few
injury reports had been made by his coworkers. When the court finally compelled BNSF to
produce the survey, the plaintiff learned that BNSF's own retained experts had previously
determined that BNSF achieved this shortage of injury reports by discouraging its mechanical
department employees from reporting injuries. (Id.) After noting that withholding the survey had
allowed BNSF to successfully make the same argument—(that the plaintiff's job was safe
because few injury reports had been made by his coworkers)—in other cases in the district, the
court granted default judgment on liability, finding the following:

> Given the . . . lack of legitimate justification for withholding the survey here,
> sanctions are appropriate in addition to attorney fees and costs. Furthermore, as
> other courts have commented, BNSF litigation strategy appears to be based upon
> winning through misconduct and therefore, the sanctions should be severe for
> both punishment and deterrence."

(Id. at 6-7 (emphasis added).)

As discussed supra, these examples are the tip of the iceberg. Indeed, Montana Supreme
Court Justice Michael Wheat has found that BNSF is engaging in a pattern and practice of trying
to win cases by abusing the discovery process:

> I also agree with the Court's decision to reverse and remand to the District Court
> on the basis that BNSF's prejudicial arguments and questions deprived [the
> plaintiff] of a fair trial. I would, however, remand to the District Court with an
> instruction to enter default judgment on liability against BNSF. A new trial is

insufficient to dissuade this particular litigant from its repeated attempts to prevail through misconduct rather than on the merits of its case. We recently noted . . . that the defendant here appears to have a pattern of practice that relies on misconduct to prevail in court. See *Spotted Horse v. BNSF*, 2015 MT 148, ¶¶ 22-27, 379 Mont. 314, 350 P.3d 52 (listing district court cases documenting discovery abuses and spoliation of evidence by BNSF) (Ex. 19) . . . I also note that in one of those cases, the district court commented that it "repeatedly warned BNSF, through its common counsel, about its common pattern and practice of discovery in other FELA cases currently or recently pending." Order Imposing Sanctions, *Danielson v. BNSF*, CDV-04-124(d) at 15 (Mont. Eighth Jud. Dist. Ct March 13, 2006) (Ex. 20). Despite those warnings, BNSF's counsel continued to engage in conduct the district court characterized as "part of a larger recurring pattern and practice of dilatory and obstructive discovery practices." *Danielson at 25*. The district court sanctioned BNSF for its misconduct by barring BNSF from presenting any evidence or argument contesting the plaintiff's proof of negligence in one case and granting default judgment as to liability in the other. *Danielson at 25*.

I also note that every time BNSF is called to account for its misconduct, it takes the same approach it took here, which is to treat each incidence of misconduct as though it occurred in isolation from all the others. A district court in Minnesota noted that tactic in an order granting over $4 million in sanctions against BNSF for multiple, flagrant instances of misconduct:

> This Court is satisfied that the record, which has developed over a period of six years, overwhelmingly supports a finding that BNSF did, in fact, engage in conduct and decision making that compromised critical evidence, interfered with witnesses, impeded the investigation by law enforcement, and misled and/or misrepresented a number of facts to Plaintiffs and this Court. BNSF has attempted to explain away this misconduct in piecemeal fashion by attributing much to inadvertence, coincidence, honest mistake, and/or legitimate business practices. This Court is simply not persuaded. Taken alone, some of BNSF's abuses might not be sanctionable, and indeed might have been understandable given the complexities of this case. But the breadth of BNSF's misconduct in this case is staggering.

Order, *Chase v. BNSF*, No. C4-05-1607, 2009 Minn. Dist. LEXIS 329 (Minn. Tenth Jud. Dist. Ct, Oct. 15, 2009). The majority opinion here notes the same problem with BNSF's tactic of treating each incidence of improper argument in isolation. Opinion, ¶ 78. I submit that just as we refuse to view each improper comment in isolation from the others, so should we refuse to view this case in isolation from all the other documented cases in which this party has sought to prevail through misconduct. Although the misconduct documented in *Spotted Horse*, *Danielson*, and *Chase* primarily involved discovery abuses,

misrepresentations, and evidence tampering, it is nonetheless relevant to the misconduct here because it shows a pattern of trying to win trials by misconduct, rather than merit.

*Anderson v. BNSF Ry.*, 380 Mont. 319, 348-50 (2015).

The above-discussed findings and sanctions have done nothing to curb BNSF's pattern and practice of abusing discovery. *See, e.g., Kowalewski v. BNSF Railway Co.*, No. 27-cv-17-145, Memorandum and Order (Minn. 4th Jud. Dist. Feb. 5, 2018) (Ex. W) (entering judgment against BNSF as a sanction for its having "engaged in a pattern of misconduct throughout [the] case characterized by late production of documents and witnesses, production of inaccurate or inconsistent documents, and by the outright failure to produce relevant evidence[,]" which the Court recognized "is clearly part of a pattern and practice of behavior that extends.nationwide." Indeed, BNSF has continued to "hide the ball" when it comes to exactly the documents Fresquez seeks through this motion. *Frost*, 2017 U.S. Dist. LEXIS 78263, at *13.

## CONCLUSION

Pursuant to its nationwide practice of abusing discovery, BNSF has destroyed documents, refused to search for other evidence, and erroneously asserted privilege. The result is that Fresquez has been permanently deprived of important pieces of evidence, had meaningful access to other pieces of information limited, and will have to prepare for trial by ambush. The Court should ordered BNSF to search for and produce what information it has not destroyed, with fees and costs to Fresquez for his trouble, and an adverse-inference instruction should be given for those pieces that have been destroyed.

Respectfully submitted,

Date:   February 19, 2018

/s/ Nicholas D. Thompson
Nicholas D. Thompson (Admitted *pro hac vice*)
THE MOODY LAW FIRM
500 Crawford Street, Suite 200
Portsmouth, VA 23704
(757) 393-4093 – Telephone
(757) 397-7257 - Facsimile
nthompson@moodyrrlaw.com

26