UNITED STATES DISTRICT COURT
THE DISTRICT OF COLORADO

| | |
|---|---|
| Brandon Fresquez,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BNSF Railway Co.,<br><br>　　　　　　　　　　　　　Defendant. | Case No. 1:17-cv-844-WYD-MLC<br><br>**PLAINTIFF'S MOTION FOR BACK AND FRONT PAY** |

## INTRODUCTION

On August 25, 2016, Plaintiff Brandon Fresquez—a longtime and loyal employee of Defendant BNSF Railway Co.—filed a complaint with the Occupational Safety and Health Administration ("OSHA"), in which he alleged BNSF terminated him for reporting and refusing to comply with an illegal and dangerous order, in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"). BNSF appealed OSHA's findings to an Administrative Law Judge ("ALJ"). Fresquez then removed the case to federal court, where a jury found that Fresquez was terminated for reporting and refusing to comply with an illegal and dangerous order, in violation of the FRSA, and he obtained what may be the largest verdict in the FRSA's history.

Under the FRSA, a plaintiff's who prevails is entitled to any backpay, with interest, reinstatement with the same seniority that the employee would have had, but for the discrimination or if reinstatement is not viable reasonable front pay, and all litigation costs, including reasonable attorney fees. A separate Motion for Attorney Fees and Cost will be filed. This motion solely addresses Fresquez's claim for his lost wages and benefits, including backpay and frontpay.

## FACTUAL BACKGROUND

On May 5, 2016, BNSF removed Fresquez from service. Believing his removal from service and subsequent termination violated the FRSA, Fresquez searched for a lawyer.

After being retained by Fresquez, on August 4, 2016, Fresquez's counsel notified BNSF that it believed BNSF's termination of Fresquez violated the FRSA, that Fresquez intended to file a complaint with OSHA, and that it believed it may be in the parties' interest to discuss settlement sooner rather than later.

Within twenty-four hours, before it could have meaningfully investigated Fresquez's allegations, BNSF responded at follows:

> BNSF dismissed Mr. Fresquez for legitimate, non-retaliatory reasons and denies it violated the FRSA. BNSF is prepared to fully defend itself against any complaint filed by Mr. Fresquez.

Almost three weeks later, on August 25, 2016, Fresquez filed a complaint with OSHA, which subsequently investigated the complaint, found there was reasonable cause to believe BNSF had violated the FRSA, and ordered BNSF to—*inter alia*—reinstate Fresquez. Fresquez responded to the order by again suggesting to BNSF that it may be in the parties' interest to discuss settlement. BNSF again spurned Fresquez's offer, refused to reinstate him, and appealed OSHA order to the Office of Administrative Law Judges.

After BNSF appealed OSHA's order to the Office of Administrative Law Judges, Fresquez removed the case to federal court. It has been two years since then, during which Fresquez has been forced to engage in protracted litigation culminating in a six day trial, after which the jury awarded Fresquez $800,000 for compensatory damages and the maximum amount of punitive damages allowed under the law, $250,000. (Minute Entry (Dkt. 129); Minute

Entry (Dkt. 132); Minute Entry (Dkt. 133); Minute Entry (Dkt. 138); Minute Entry (Dkt. 144); Minute Entry (Dkt. 145); Jury Verdict (Dkt. 151).)

Fresquez seeks an award of backpay in the amount of $183,821, with interest, and frontpay in the amount of $1,338,706, with interest, for a combined total award for lost wages and benefits in the amount of $1,522,527, with interest.

Jeffrey Opp, an experienced financial consultant and economist, was retained by Fresquez to calculate his backpay and frontpay. The parties have stipulated that Mr. Opp's is an expert in his field and his report has been entered into evidence in this matter as Exhibit 60. Attached hereto and incorporated herein to this brief in support of Fresquez's Motion for Lost Wages. Further, Mr. Opp will testify during the hearing on lost wages to further explain his calculations.

Mr. Opp in his report provides the numerical and factually data which supports his computation of the economic loss of Fresquez as a result of his unlawful termination from BNSF. These calculations deduct from the Fresquez claim for backpay and frontpay all wages and benefits received by Fresquez as a result of his successful effort in finding the best available alternative employment; thereby satisfying his legal obligation to mitigate his damages. Additionally, the lost future wages are calculated to their present value.

## LEGAL STANDARD

"An employee prevailing in any [FRSA action] **shall** be entitled to all relief necessary to make the employee whole." 49 U.S.C. § 20109(e)(1) (emphasis added). An employee prevails if he or she succeeds "on any significant issue in litigation which achieves some of the benefits the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Make-whole relief "**shall** include reinstatement with the same seniority status that the employee would have

had, but for the discrimination. . . any backpay, with interest[ ] and . . . compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees. 49 U.S.C. § 20109(e)(2) (emphasis added).

## ARGUMENT

There can be no doubt that Fresquez was successful. (Jury Vedict (Dkt. 152).) Under the FRSA, he is therefore entitled to backpay and frontpay, and the litigation costs, expert witness fees, and attorneys' fees he reasonably incurred, as well as interest. *See* 49 U.S.C. § 20109(e)(2). For the below-discussed reasons, Fresquez seeks an award for backpay in the amount of $183,821, with interest, and frontpay in the amount of $1,338,706, with interest, for a total award for lost wages in the amount of $1,522,527, with interest.

**1. BACKPAY WITH INTEREST**

The FRSA provides a prevailing plaintiff with the right to recover any backpay, with interest. *See* 49 U.S.C. § 20109(e)(2)(A). The purpose behind an award of backpay is to make the plaintiff whole. Estate of Pitre v. Western Electric Co., 975 F2d 700 (10th Cir. 1992). An award of backpay should only be denied for reasons if applied would not frustrate the primary purpose of the statute of making a plaintiff whole for past discriminatory conduct. Id. Mr. Opp in his economic loss report has calculated Fresquez's back pay losses in the amount of $183,821. Mr. Opp in calculating the amount for Fresquez backpay deducted those wages and benefits Fresquez obtained through his best available alternative employment in the Denver market. Fresquez testified at trial that he originally attempted to obtain employment with other railroads so that he could earn a comparable salary and benefits. Unfortunately, the railroads he applied to would not offer him employment because he had to report on his application that he had been fired by BNSF. As a result, Fresquez was left with no other choice but to pursue and ultimately

obtain the best available alternative employment as an inspector in the construction industry. Unfortunately, the wages and benefits earned by Fresquez in this employment are less than that for which Fresquez would have obtained with continued employment at BNSF. Therefore, the amount of backpay sought for Fresquez in Mr. Opp's economic loss analysis is solely the difference between those wages and benefits Fresquez would have earned had he not being unlawfully terminated from BNSF and those he actually earned in other employment. As a result, Fresquez seeks an award for backpay in the amount of $183,821, with interest.

### 2. Front Pay in Lieu of Reinstatement

The FRSA provides a prevailing plaintiff with the right to an order of reinstatement with the same seniority the employee would have had but for the discrimination. See 49 U.S.C. § 20109(e)(2)(A). Fresquez remains willing and able to return to his employment as a track inspector at the same level of seniority with BNSF. Counsel for Fresquez before the trial, immediately after the jury verdict, and prior to the filing of this motion for front pay in lieu of reinstatement consulted with counsel for BNSF and was told that BNSF will not reinstate Fresquez; and as a result reinstatement is not a viable option. While an employee is entitled to reinstatement to the job he would have held but for the discrimination or retaliation, See Duval v. Webb, 194F 3D 1116, 1143 & n.19 ( 10th Cir. 1999), " although reinstatement is the preferred remedy and should be ordered whenever it is appropriate, it is not always a viable option." Abuan v. Level 3 Communs., Inc., 353 F. 3d 1158, 1176 ( 10th Cir. 2003). "This Court has recognized that front pay may be appropriate where employer's extreme hostility renders a productive and amicable working relationship impossible, or if the employer-employee relationship has been irreparably damaged by animosity caused by the lawsuit. Under such

circumstances, an award of future damages in lieu of reinstatement furthers the remedial purposes of the [statute] by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct." Hayes v. SkyWest Airlines, Inc., 2018 US Dist. LEXIS 163023 (D. of Colo., September 24, 2018)(citing Abuan v. Level 3 Communs., Inc., 353 F. 3d 1158, 1176 ( 10th Cir. 2003)).  "(L)itigation, especially litigation that culminates in a trial, is often a polarize in process, driving parties further part rather than closer together."  Buonanno v. AT&T Broadband, LLC, 313 F.Supp.2d 1069 (D. of Colo. 2004).  In this matter, Fresquez successfully proved that his immediate supervisors retaliated against him on the basis of his reporting safety defects and refusing to engage in illegal conduct. Furthermore, after protracted litigation, the jury awarded a sizable pain and suffering and punitive damages award to Fresquez. It is therefore highly unlikely that reinstatement of Fresquez to his prior position with BNSF is a viable option and it is therefore proper for the court to award front pay in lieu of reinstatement.

Determination of an appropriate award of front pay requires a court to predict future events and consider many complicated and interlocking factors, Mason v. Oklahoma Turnpike Authority, 115 F.3d 1442, 1458 (10th Cir. 1997), and any award should reflect the individualized circumstances of the plaintiff and the employer. Davoll, 194 F.3d at 1144.  Factors relevant to the determination include, but are not limited to, work life expectancy, salary and benefits at the time of termination, any potential increase in salary through regular promotions and cost-of-living adjustment, the reasonable availability of other work opportunities, the period within which a plaintiff may become reemployed with reasonable efforts, and methods to discount any award to net present value. Id.  While the court should avoid granting the plaintiff a windfall, Whittington v. Nordam Group Inc., 429 F.3d 986, 1001 (10th Cir. 2005), ultimately its discretion

should be measured against any anti-discrimination statute's purpose to make the plaintiff whole. Davoll, 194 F.3d at 1143-44.

Mr. Opp's economic loss analysis of Fresquez front pay considers and deducts the wages and benefits Fresquez will obtain from the best available alternative employment and calculates those losses to their present value. Furthermore, Mr. Opp's report and the testimony of Fresquez at trial both support that there is not comparable employment for Fresquez outside of the railroad. The salary and health and retirement benefits Fresquez would have received but for BNSF's discriminatory conduct cannot be obtained outside of the railroad industry. As a result, there simply is not equivalent alternative employment available to Fresquez.

An award of front pay must specify an end date. Davoll, 194 F.3d at 1143. Front pay is appropriately cut off at the point at which the plaintiff finds employment comparable or superior to her old job. Hayes v. SkyWest Airlines, Inc., 2018 US Dist. LEXIS 163023 (D. of Colo., September 24, 2018)(citing Williams v. Pharmacia, Inc., 137 F.3d 944, 954 (7th Cir. 1998)). Courts in this district have held that in determining the appropriate front pay to award a plaintiff to make them whole, it is proper to consider whether the plaintiff with reasonable care to diligence could seek comparable employment and if there is little prospect of finding comparable employment is it appropriate to extend the award of front pay until the plaintiff reaches retirement age. See, e.g., Hayes v. SkyWest Airlines, Inc., 2018 US Dist. LEXIS 163023 (D. of Colo., September 24, 2018)(awarding plaintiff an award of front pay for 13 years to the plaintiff's date of retirement). Fresquez seeks in front pay damages the difference in those amounts he would have received in salary and retirement benefits had he been able to work until the age of 60, the year in which he would have been entitled to a full retirement from the railroad. Fresquez should not be denied these wages and retirement benefits solely because of

BNSF's discriminatory conduct. Absent the disciplinary evidence introduced at trial which proved Fresquez was retaliated as a result of reporting safety defects, there is a lack of evidence that Fresquez would not have been able to continue his successful career with BNSF. In fact, the evidence introduced at trial is to the contrary, proving that Fresquez was otherwise a loyal and exemplary employee of BNSF.

In conclusion, Mr. Opp's present value calculation of Fresquez lost wages from the date of trial through his expected retirement date totals the amount of $927,606; the present value calculation of the loss retirement benefits Fresquez would have received if he had retired from BNSF from Tier 1 regular employee annuity pension total the amount of $247,305 and the present value calculation of the Tier II regular employee annuity pension totals the amount of $163,745. Fresquez's seeks a total front pay award in the amount of $1,338,706, with interest.

## 3. INTEREST

The FRSA and federal law entitle Fresquez to pre and post-judgment interest.

**Pre-Judgment and Post-Judgment Interest**

For purposes of determining interest, there was a time when it would have been important that an amount awarded for compensatory damages is unliquidated until the verdict; however, this common-law distinction has long since lost its hold on the legal imagination. *See*, *e.g.*, *Kansas v. Colorado*, 533 U.S. 1, 9-22 (2001). "[S]ince 1933[, however, courts] have consistently acknowledged that a monetary award does not fully compensate for an injury unless it includes an interest component." *Id*. The Tenth Circuit, in turn, has found that "there is a clear preference favoring an award of prejudgment interest . . . ." *Duran v. Koehler*, No. 10-cv-01569-REB-KMT, 2014 U.S. Dist. LEXIS 112045, at *4 (D. Colo. Aug. 13, 2014) (citing *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236-37 (10th Cir. 2000)).

As far as the rate at which prejudgment interest should be awarded, the decision "rests firmly within the sound discretion of the trial court." *Duran*, 2014 U.S. Dist. LEXIS 112045, at *5 (quoting *Weber v. GE Group Life Assurance Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008)) (internal quotation marks omtted). "Where the prejudgment rate is governed by federal law, a court is free to choose any rate which would fairly compensate the plaintiff for the delay." *Duran*, 2014 U.S. Dist. LEXIS 112045, at *5. "Courts commonly look to state statutory prejudgment interest provisions as guidelines for a reasonable rate." *Duran*, 2014 U.S. Dist. LEXIS 112045, at *5 (quoting *Weber*, 541 F.3d at 1016) (internal quotation marks omitted).

The Secretary of Labor, whose interpretation of the FRSA receives *Chevron* deference,[1] has said that "26 U.S.C. § 6621 provides the appropriate rate of interest to ensure that victims of unlawful retaliation under [the] FRSA . . . are made whole" and that such rate should apply "from the date of [the adverse action] to the date of reinstatement." *Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act*, 80 FR 69115-01 (Nov. 9, 2015); *Cain v. BNSF Railway Co.*, ALJ No. 2012-FRS-19 (Ex. Z) at 12 (October 9, 2012). Section 6621, in turn, provides that amounts owed should be compounded daily, which the Secretary has recognized is the norm in private lending,[2] at the Internal Revenue Service interest rate, which is generally the Federal short-term rate plus three percentage points. The Secretary has explained that it is calculating interest using this method is appropriate because such method "provides a reasonably accurate prediction of market outcomes (which represents the loss of investment opportunity by the complainant and the

---

[1] S*ee, e.g.*, *TransAm Trucking, Inc. v. Admin. Review Bd.*, No. 15-9504, 2016 U.S. App. LEXIS 13071, *6-7 (10th Cir. Jul. 15, 2016).

[2] *See, e.g.*, *Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act*

employer's benefit from use of the withheld money) and thus provides the complainant with appropriate make-whole relief." *Procedures for the Handling of Retaliation Complaints Under the National Transit Systems Security Act and the Federal Railroad Safety Act*.

## CONCLUSION

Based on the foregoing authority, Fresquez seeks an award for backpay in the amount of $183,821, with interest, and frontpay in the amount of $1,338,706, with interest, for a total award for lost wages and benefits in the amount of $1,522,527, with interest.

April 17, 2019

                                      Respectfully submitted,

                                      /s/ Jonathan L. Stone
                                      Jonathan L. Stone (VA#75483)
                                      Nicholas D. Thompson (MN#0389609)
                                      THE MOODY LAW FIRM, INC.
                                      500 Crawford Street, Suite 200
                                      Portsmouth, VA 23704
                                      (757) 393-4093 – Telephone
                                      (757) 397-7257 - Facsimile
                                      nthompson@moodyrrlaw.com

                                      *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 17th day of April, 2019 I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Keith M. Goman, Esq.
Gillian Dale, Esq.
Hall & Evans, LLC
1001 Seventeenth Street
Suite 300
Denver, CO 80202
gomank@hallevans.com
daleg@hallevans.com

            /s/ Jonathan L. Stone
            Jonathan L. Stone (VA#75483)