IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0844-WJM-SKC

BRANDON FRESQUEZ,

    Plaintiff,

v.

BNSF RAILWAY CO.,

    Defendant.

---

**ORDER GRANTING IN PART PLAINTIFF'S
FEE MOTION & SUPPLEMENTAL FEE MOTION**

---

Plaintiff Brandon Fresquez ("Plaintiff") brought this action against BNSF Railway Co. ("BNSF"), for retaliating against him in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"). The case proceeded to a 6-day trial before Senior U.S. District Court Judge Wiley Y. Daniel. The jury returned a verdict in favor of Plaintiff finding that BNSF retaliated against Plaintiff in violation of the FRSA. (ECF No. 152.) Currently before the Court is Plaintiff's Motion for Fees and Costs (ECF No. 165) and Plaintiff's Supplemental Motion for Fees and Costs (ECF No. 199) (together, the "Fee Motions"). For the reasons explained below, the Court grants in part the Fee Motions.

### I. ANALYSIS

**A.    Attorneys' Fees**

Implicit in any award of attorneys' fees is the requirement that any such fees must be reasonable. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th

Cir. 1986); *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (prevailing party must make good faith effort to exclude from a fee request any excessive, redundant, or otherwise unnecessary hours). The party requesting attorneys' fees has the "burden to prove and establish the reasonableness of each dollar, each hour, above zero." *Mares*, 901 F.2d at 1201.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhardt*, 461 U.S. 424, 433 (1983). This is commonly referred to as the "lodestar method" for calculating fees. *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995). The best evidence of reasonable fees is "meticulous time records that 'reveal . . . all hours for which compensation is requested and how those hours were allotted to specific tasks.'" *Id.* at 1510 (quoting *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983)). The prevailing party must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Where such an effort appears "inadequate, the district court may reduce the award accordingly." *Id.* at 433.

1. <u>Rate</u>

Plaintiff's counsel seeks an hourly rate of $625 per hour. (ECF No. 165 at 6.) Attorney Nick Thompson is a trial lawyer who graduated from the University of Minnesota School of Law in 2008, and had approximately 10 years of experience at the time of trial. (ECF No. 165-27 at 1.) Attorney Jonathan Stone is a trial lawyer who graduated from Catholic University Columbus School of Law in 2007, and had

approximately 11 years of experience at the time of trial. (ECF No. 165-26 at 1.)

Plaintiff's counsel first argues that Plaintiff was unable to obtain local counsel in Colorado for his employment litigation against the railroads, and thus out-of-state rates—not Colorado rates—are appropriate and reasonable. (ECF No. 165 at 18.) Plaintiff brought a relatively straightforward employment retaliation claim, but he did so under a recent statute against a sophisticated and specialized client. Plaintiff's counsel has experience litigating FRSA claims and litigating against railroads. Moreover, Plaintiff's union representatives referred him to an out-of-state firm above any other Colorado-based firm. Under these circumstances, the Court finds that it was reasonable for Plaintiff to hire out-of-state counsel for this litigation. *Wooten v. BNSF Ry. Co.*, 387 F. Supp. 3d 1078, 1108 (D. Mont. 2019) ("While this Court is certainly reluctant to state that Montana attorneys are unable to perform this type of litigation because of a lack of experience, expertise, or specialization, the Court is also unaware of a Montana law firm that is currently representing claimants in FRSA litigation at this level.").

Nonetheless, the hourly rate "must reflect the prevailing market rates in the relevant community." *Jane L.*, 61 F.3d at 1510 (internal quotation marks omitted). "Plaintiffs must provide evidence of the prevailing market rate for similar service by lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Lippoldt v. Cole*, 468 F.3d 1204, 1224 (10th Cir. 2006) (internal quotation marks omitted). Plaintiff's counsel argues that an hourly rate of $625 is reasonable because (a) Plaintiff's counsel did not charge for staff time, lowering the effective rate to less than $575 per hour; (b) the rate falls within the location-adjusted Laffey Matrix

estimate of fees; and (c) other attorneys have filed affidavits attesting that $625 is a reasonable rate. (ECF No. 165 at 17–20.)

Plaintiff's counsel claims their "effective rate" is $575 an hour because they "decided not to charge for staff." (*Id.* at 6.) Plaintiff's counsel makes no attempt to justify this calculation. It is unclear if a staff member worked alongside the attorneys for each of the hours expended on this litigation with an hourly rate of $50, if staff worked double the number of hours at a $25 hourly rate, if staff worked half as many hours at a $100 hourly rate, etc. Plaintiff's counsel has made no effort to quantify paralegal or staff time or to identify the actual hourly rate of any of the individuals they purport to include as "staff" for these purposes. Moreover, secretarial activities are typically considered overhead and "properly absorbed by counsel as general overhead." *See United States ex. rel. Trustees of Colo. Laborers Health & Welfare Tr. Fund v. Expert Envtl. Control, Inc.*, 790 F. Supp. 250, 252 (D. Colo. 1992). It is thus impossible for the Court to determine how staff time factors into the $625 hourly rate, and similarly impossible for the Court to evaluate Plaintiff's counsel's claim that the "effective" rate is $575 per hour. The Court considers Plaintiff's counsel's attempt to argue that their "effective" rate is lower than the $625 hourly rate disingenuous.

Plaintiff's counsel also argue that their hourly rate of $625 is reasonable because it is within the location-adjusted Laffey Matrix value for attorneys of similar experience. The Laffey Matrix is used to determine the hourly rate of attorneys in the Washington D.C.-Baltimore area. *Pirera v. Sullivan Kline Grp., LLC*, 2019 WL 4201500, at *4 (D. Colo. Sept. 5, 2019). Courts in this District have declined to adopt the Laffey Matrix

rates, even when adjusted for the regional costs. *Id.* (noting that the Laffey Matrix "has not been adopted generally for use outside the District of Columbia" (internal quotation marks omitted)); *Reichers v. Delaware Asset Mgmt., LLC*, 2013 WL 6096136, at *3 (D. Colo. Nov. 20, 2013) (stating that the Laffey Matrix "is not more helpful than the rates actually used by other courts or the rates of law firms" (internal quotation marks omitted)); *Howard v. Midland Credit Mgmt., Inc.*, 2012 WL 4359361, at *3 (D. Colo. Sept. 24, 2012) ("Laffey Matrix does not adequately establish the prevailing rate for consumer law advocates in Colorado"). Nor does Plaintiff's counsel explain how they arrived at the location-adjusted rates. The Court declines to adopt the Laffey Matrix adjusted rates, and will instead look at the prevailing market rate for attorneys with Plaintiff's counsel's skill and experience.

Plaintiff's counsel submitted declarations from Jeffrey Chod (ECF No. 165-18) and James Cox, Jr., (ECF No. 165-19), two Federal Employers' Liability Act ("FELA") lawyers who represent injured railroad workers. Messrs. Chod and Cox both state that Plaintiff's counsel Mr. Thompson has extensive experience with FRSA claims, and is well-regarded for his work among attorneys that specialize in such claims. (ECF No. 165-18 at 3; ECF No. 165-19 at 2.) They also both opine that Mr. Thompson's hourly rate of $625 is reasonable. (ECF No. 165-18 at 3; ECF No. 165-19 at 3.) They do not, however, address whether this is the prevailing market rate for such work, nor do they address the qualifications of Mr. Stone.

"If the district court does not have adequate evidence of prevailing market rates for attorney fees, then it may, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Lippoldt*, 468 F.3d at 1225. The Court thus

5

looks to the prevailing market rate for employment lawyers within Colorado, and for FRSA practitioners nationwide, in order to determine whether Plaintiff's counsel's requested rate of $625 is reasonable. First, the Colorado Bar Association's 2017 Economics of Law Practice Survey shows that the median hourly billing rate for Colorado-based, plaintiff's-side, labor and employment private practitioners is $313, and the 75% percentile is $356.[1] These rates establish a baseline of reasonableness.

The Court will also consider the prevailing rates for FRSA litigation, given Plaintiff's counsel's specialized knowledge. In *Wooten*, the U.S. District Court for the District of Montana awarded $425 per hour to a veteran railroad FRSA and FELA lawyer who graduated from law school in 1978, taking into account "the degree of risk involved in taking on a FRSA claim on a continency basis, [the law firm's] national prominence in FRSA litigation, the level of knowledge required to successfully litigate a FRSA claim, and the level of competency and diligence required to successfully litigate this particularly contentious FRSA claim." 387 F. Supp. 3d at 1109; *see also Wallis v. BNSF Ry. Co.*, 2014 WL 1648472 (W.D. Wash. Apr. 23, 2014) (awarding the same attorney an hourly rate of $400 per hour for FRSA litigation).

In 2013, the U.S. District Court for the District of Connecticut awarded $525 per hour in an FRSA case to an attorney who graduated from Harvard Law in 1977 and who was "undeniably a leading specialist in the law governing railroad employees' rights" with a "longstanding and highly developed practice [that] makes him more efficient, creative, and effective for his railroad employee clients than an attorney of

---

[1] Colorado Bar Association, *2017 Economics of Law Practice Survey*, http://www.cobar.org/portals/COBAR/repository/2017EconomicSurvey.pdf.

similar trial experience in federal litigation but without the benefits of his specialization."
*Barati v. Metro-North R.R. Co.*, 939 F. Supp. 2d 153, 156 (D. Conn. 2013). The same court awarded $375 per hour for an attorney with twelve years of litigation experience. *Id.* More recently, the U.S. District Court for the Middle District of Georgia awarded an hourly rate of $405 in an FRSA case to two lawyers who were "experienced, with over 60 years of combined practice and extensive experience in railroad litigation." *O'Neal v. Norfolk S. R.R. Co.*, 2018 WL 6005425, at *2 (M.D. Ga. Nov. 15, 2018).

Considering the prevailing market rates for Colorado employment lawyers, the national rates for experienced FRSA and FELA lawyers, Plaintiff's counsel's experience, and the level of competence required to successfully litigate this FRSA claim, the Court finds that a reasonable hourly rate for both Mr. Thompson and Mr. Stone is $450 per hour.

2. <u>Hours</u>

Plaintiff's counsel billed 1252.3 hours over the course of this litigation. (ECF Nos. 165-1 & 199-1.) Plaintiff's counsel claims that they have exercised billing judgment. In particular, Plaintiff's counsel notes that, as a result of conferring with BNSF prior to submission of the Motion, counsel reduced the time for which they seek fees by 200 hours. (ECF No. 165 at 6.) Such efforts are an appropriate exercise of billing judgment. In addition, Plaintiff's counsel claims that they did not charge for "more than 150 hours of work" that was not contemporaneously recorded. (ECF No. 165 at 14.) It is unclear how Plaintiff's counsel arrived at this estimate given that the hours were not contemporaneously recorded. Nonetheless, Plaintiff's counsel appears to have exercised appropriate billing judgment, and their timesheets show how their hours were

7

allotted to specific tasks.  On the whole, and with the exceptions noted below, the Court finds that counsel's hours are reasonable.[2]

BNSF raises a number of challenges to the hours billed by Plaintiff's counsel. (ECF Nos. 170 & 200.) The Court finds that the following challenges by BNSF lack merit: time spent on an unsuccessful motion to compel, time spent obtaining records not used at trial, internal conferences with attorneys not directly involved in discovery or trial, certain time spent on drafting discovery requests, and time spent drafting certain motions and conferring on certain topics.  (ECF Nos. 170 & 200.)  The Court finds that Plaintiff's counsel has sufficiently justified the time spent on these activities, and thus they are properly included as hours expended on the litigation.

The Court will review, however, BNSF's meritorious objections.

      a.    *Travel time*

BNSF argues that Plaintiff's counsel should not charge for travel time to and from Colorado because Plaintiff could have retained competent counsel in Colorado. (ECF No. 170 at 10; ECF No. 200 at 3.)  As discussed above, Plaintiff's choice to retain out-of-state counsel was reasonable, and thus the Court will not exclude hours spent traveling to and from Colorado.

BNSF further contends that Plaintiff's counsel should only bill for time spent actually working on the case during travel, rather than billing all of the time spent in transit.  (ECF No. 170 at 11; ECF No. 200 at 3.)  In response, Plaintiff's counsel agrees

---

[2] Plaintiff's counsel asks for BNSF's billing records so that they may show reasonableness by comparison.  (ECF No. 165 at 15–16.)  Because the Court finds that Plaintiff's counsel's hours are reasonable, BNSF need not produce its own billing records.

8

to seek reimbursement for only half of their travel time. (ECF No. 175 at 6.) The Court finds that Plaintiff's counsel's decision to seek recovery for only half of their travel time is appropriate. *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1259 (D. Kan. 2017) ("Although some attorneys customarily charge for such time at their full hourly rate, the Court believes that the most reasonable approach is to allow counsel to recover 50 percent of travel time.").

The Court has reviewed Plaintiff's counsel's time records, and finds that travel time was appropriately reduced in the initial fee motion. (ECF No. 165-1.) However, travel time was not reduced by half in the supplemental fee motion. (*See* ECF No. 199-1 at 3–4.) The Court will thus reduce Mr. Thompson's hours spent traveling from 18.2 hours to 9.1 hours, and will reduce Mr. Stone's travel time from 17 hours to 8.5 hours. In sum, the Court will subtract 17.6 hours from the total hours billed for counsel's travel time.

b.  *Hours spent drafting Plaintiff's initial fee motion*

Mr. Thompson billed 69.8 hours drafting, editing, and reviewing the initial fee motion, not including the time he conferred with Colorado attorneys who provided affidavits on Plaintiff's behalf. (ECF No. 199-1 at 2-3.) BNSF argues that the time expended was excessive for a "not particularly complex" motion. (ECF No. 200 at 2.) The Court agrees, especially as to an attorney who specializes in this sort of work and therefore must also have experience in drafting this kind of fee motion. The Court will reduce this time by 50%, and strike 34.9 of the hours spent drafting the motion.

c.  *Hours spent drafting motion for leave to file out of time*

Plaintiff's counsel billed time drafting a motion for leave to file out of

9

Plaintiff's supplemental briefing on lost wages. (ECF No. 196.) This motion was neessary because Plaintiff's counsel had mistakenly thought it was due the following week. While it was reasonable and indeed necessary for Plaintiff to file a motion for leave to file out of time, the Court finds that it is not reasonable to charge Plaintiff's counsel's mistake to BNSF under these circumstances. Therefore, the Court will subtract two hours from the total hours billed on this line item.

3. Lodestar Amount

Of the 1252.3 hours billed by Plaintiff's counsel (*see* ECF Nos. 165-1 & 199-1), the Court will strike 54.5 hours for the reasons discussed above. The Court finds that the remaining 1197.8 hours were reasonably expended on the litigation. As discussed above, the Court will use an hourly rate of $450. Multiplying the hours spent by the reasonable hourly rate comes to $539,010. Accordingly, the Court finds that Plaintiff's counsel is entitled to $539,010 in attorneys' fees.

**B. Costs**

1. Taxable Costs

The Court will not address any *taxable* costs sought at this time. Pursuant to 28 U.S.C. § 1920, the Clerk may tax the following costs: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." Plaintiff must

follow the procedures for the taxation of costs set forth in D.C.COLO.LCivR 54.1. Plaintiff shall until April 3, 2020 to comply with these procedures.

### 2. Non-Taxable Costs

The FRSA allows for recovery of "litigation costs," but does not define that term. 49 U.S.C. § 20109. The Court presumes that these "litigation costs" are in addition to the taxable costs recoverable under § 1920. Plaintiff's counsel seeks $83,041.43 in such litigation costs. (ECF No. 165 at 1; ECF No. 199.) BNSF argues that "litigation costs" should be construed narrowly and limited to taxable costs under 28 U.S.C § 1920. (ECF No. 170 at 12.) This is not the first time BNSF has made such an argument. In *Wallis* and *Wooten*, the district courts there rejected BNSF's argument that only expert costs and § 1920 costs are available under the FRSA. *Wallis*, 2014 WL 1648472, at *7; *Wooten*, 387 F. Supp. 3d at 1113. Those courts found that "Ninth Circuit precedent makes clear that the Court may include certain litigation expenses as a part of a reasonable attorney's fee." *Wallis*, 2014 WL 1648472, at *7; *Wooten*, 387 F. Supp. 3d at 1113.

"The Tenth Circuit has indicated that [i]tems that are normally itemized and billed in addition to the hourly rate may be included in fee allowances if reasonable in amount." *Degrado v. Jefferson Pilot Fin. Ins. Co.*, 2009 WL 1973501, at *11 (D. Colo. July 6, 2009); *see also Brown v. Gray,* 227 F.3d 1278, 1297 (10th Cir. 2000) ("reasonable out-of-pocket expenses not normally absorbed as part of law firm overhead should be reimbursed as attorney's fees under section 1988"). The Court rejects BNSF's narrow interpretation of "litigation costs" and holds that a prevailing party

11

in a FRSA action may recover, in addition to taxable costs under § 1920, those litigation costs which were reasonably incurred and which are normally itemized and billed to a client, separate and apart from the hourly legal fees charged.

BNSF next challenges the reasonableness of Plaintiff's litigation costs, particularly Plaintiff's travel expenses, expenses incurred in connection with the trial, and office supplies. (ECF No. 170 at 13–15; ECF No. 200 at 3–6.) BNSF observes that Mr. Thompson billed for trips to Minnesota, Georgia, and Los Angeles despite no witnesses in these locations, and cites to Plaintiff's billing record. (ECF No. 170 at 14.) BNSF also objects to, among other things, excessively long stays in hotels, reimbursement of certain hotel and airline expenses, a $1,748.94 restaurant bill submitted by one of Plaintiff's coworkers while staying at the Ritz-Carlton during trial, bills for audio visual equipment for depositions during a period when no depositions took place, and legal research and office supplies with no apparent tie to the case.

In response to BNSF's objections, Plaintiff's counsel states that he "cannot address the reasonableness of any given costs without being pointed to it," and claims that counsel exercised billing judgment. (ECF No. 175 at 7.) Plaintiff's counsel suggests that some trips were apportioned among multiple clients when counsel flew to different locations for different cases. (*Id.*) They also explain that the supplies were necessary to connect to the Court's technology systems during trial and that research was necessary to respond to the motion for summary judgment. (*Id.* at 7.)

"The party seeking costs bears the burden of establishing that the requested sums were reasonably necessary to the litigation." *Tivis v. Dowis*, 2016 WL 695933, at *1 (D. Colo. Feb. 22, 2016). The Court has reviewed the record, and has significant

concerns about the diligence of Plaintiff's counsel's review of litigation costs, particularly the travel costs and trial-related accommodation costs. Plaintiffs have failed to fully discharge their burden in this respect. There are a number of inappropriate charges that trouble the court, including a $1,585.00 food and beverage bill at Elways Restaurant (ECF No. 199-2 at 85), one of the, *if not the,* most expensive restaurant in Denver. The Court also questions the need for trial witnesses to stay at the Ritz-Carlton hotel, one of the most expensive hotels in Denver. The unreasonableness of this expense is magnified when one considers, and the Court takes judicial notice of the fact, that there are at least a dozen perfectly acceptable and substantially less expensive hotels within a half-mile of the federal courthouse. Two other cost items of concern: an expert's costs for access to the Ritz-Carlton gym for four days during trial at the cost of $50 a day (*id.* at 81–87), and the use of a hotel in Los Angeles despite no relevant parties or witnesses being located there (ECF No. 165-3 at 36).

However, some of the concerns raised by BNSF do not withstand scrutiny, given that Plaintiff often apportioned travel costs to the various cases involved in each trip, and has endeavored to explain the legal research costs and expenses for particular supplies. (*See, e.g.*, *id.* at 38, 72, 110.) In addition, BNSF stretches the truth when it states that Plaintiff's counsel included receipts for trip to Georgia; the receipt cited is from the Atlanta airport, though which Plaintiff's counsel flew on their litigation-related travel. (ECF No. 165-3 at 84, 122, 150, 290.)

BNSF requests that "if travel costs are awarded[,] the Court examine each of the submitted receipts to determine whether they sufficiently identify how the cost relates to the litigation and demonstrate that the cost is reasonable." (ECF No. 170 at 14.) The

13

Court need not become a "green-eyeshade accountant[]" to reach a determination on recoverable litigation costs. *Villaneuva v. Account Discovery Systs., LLC*, 77 F. Supp. 3d 1058, 1082–83 (D. Colo. 2015). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* at 1083. Accordingly, the Court finds it appropriate to reduce Plaintiff's requested costs by 45%, and will award Plaintiff $45,672.79 in non-taxable litigation costs.

**C.   Expert Fees**

The FRSA explicitly permits recovery of "expert witness fees." 49 U.S.C. § 20109(e). Plaintiff's counsel seeks $50,748.74 for expert fees in its initial fee motion and an additional $7,973.75 in the supplemental fee motion, for a total of $58,722.49. BNSF challenges only those fees paid to Joe Lydick and the Jones CPA Group. (ECF No. 170 at 13; ECF No. 200 at 7.) With respect to the unchallenged experts, the Court finds that Plaintiff's counsel has justified the fees.

BNSF challenges Lydick's expert fee of $28,505.66 fee as excessive. (ECF No. 170 at 13.) At trial, Plaintiff called Lydick to testify as an expert in track safety and defect reporting. (ECF No. 157 at 81.) Plaintiff argues that this was a "central issue" to the case (ECF No. 165 at 10), whereas BNSF states that the points made by Lydick—namely the importance of accurately inspecting track and reporting track defects—were not disputed. (ECF No. 170 at 13.) Plaintiff also argues that "BNSF has not explained why the amount paid to Lydick . . . is excessive." (ECF No. 165 at 11; *see* ECF No. 175 ("BNSF cites to no authority supporting that Fresquez should not be reimbursed for the amounts he paid to Lydick.").)

As a preliminary matter, Plaintiff—not BNSF—bears the burden to show that all costs which it seeks are reasonable. See Mares, 901 F.2d at 1201; *Jones v. BNSF Ry. Co.*, 2017 WL 3053993, at *1 (D. Kan. July 19, 2017) (prevailing party in FRSA litigation must show that costs are reasonable). To meet its burden, Plaintiff states that the reasonableness of fees is supported by "actually [paying] that amount to [Lydick] even though reimbursement was not guaranteed." (ECF No. 165 at 11; see ECF No. 175 at 7.) Plaintiff does not attempt to explain the hours Lydick spent on the case, expenses incurred in forming the expert opinion, Lydick's expert fee rates, or anything else that would address why Lydick was paid more than twice as much as the next highest paid expert.

On the record before it, the Court finds that Plaintiff has failed to show that Lydick's expert fee is reasonable, particularly when Lydick testified *on an uncontested issue* and his fee was more than double the other experts. Nonetheless, the Court also finds that some fee is reasonable. Accordingly, the Court will reduce Lydick's expert fee of $28,505.66 by $18,205.66 to $10,300 so as to (nearly) match that of the next highest paid expert.

BNSF also challenges the $2,035 fee paid to Jones CPA Group, an accountant hired by Plaintiff's counsel to review the reasonableness of fees and costs. (ECF No. 200 at 6.) BNSF argues that "[a]n attorney familiar with the case and with allowable costs is more qualified to perform this analysis than an accountant with no involvement in the case." (*Id.*) The Court disagrees. There were a very large number of costs associated with this case, and Plaintiff's counsel was not required to wade through piles

of receipts to determine the costs incurred. Rather, it was reasonable to hire an outside professional to analyze the costs and raise issues where necessary, rather than spend attorney hours (particularly at Plaintiff's counsel's requested rate of $625) compiling and reviewing such information.

In sum, the Court finds that Plaintiff is entitled to $40,516.83 in expert witness fees.

## II. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff's Motion for Fees and Costs (ECF No. 165) is GRANTED IN PART;

2. Plaintiff's Supplemental Motion for Fees and Costs (ECF No. 199) is GRANTED IN PART;

3. Plaintiff is awarded $539,010.00 in attorneys' fees, $45,672.79 in costs, and $40,516.83 in expert fees, for a total award of $625,199.62; and

4. Plaintiff is granted leave until **April 3, 2020** within which to apply for an award of taxable costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 20th day of March, 2020.

BY THE COURT:

William J. Martinez
United States District Judge