IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-0844-WJM-SKC

BRANDON FRESQUEZ,

    Plaintiff,

v.

BNSF RAILWAY CO.,

    Defendant.

---

## ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

---

Plaintiff Brandon Fresquez sued his former employer, Defendant BNSF Railway Co. ("BNSF"), for retaliating against him for engaging in protected activity in violation of the Federal Railroad Safety Act, 49 U.S.C. § 20109 ("FRSA"). The case proceeded to a 6-day jury trial before Senior U.S. District Judge Wiley Y. Daniel, and the jury returned a verdict in favor of Fresquez. Judge Daniel reserved questions of back pay and front pay for judicial determination. (ECF No. 159 at 131–32.) Post-trial, the parties briefed the issues. Sadly, Judge Daniel passed away before ruling on those issues. The matter was reassigned to the undersigned.

The Court held a hearing on September 6, 2019, and issued an order on November 4, 2019 ("November Order") resolving certain disputes and ordering further briefing consistent with the Court's rulings. (ECF No. 193.) The parties submitted their supplemental briefing, and, on December 17, 2019, the Court ordered that BNSF pay a tax-adjusted award of back pay, front pay, and prejudgment interest of $696,173

("December Order"). (ECF No. 201 at 17.) The Court also instructed the Clerk to enter judgment in favor of Fresquez and against BNSF in the amount of $1,746,173. (*Id.*)

Currently before the Court is BNSF's Motion to Alter or Amend the Judgment ("Motion").[1] (ECF No. 211.) The Motion was filed within 28 days after entry of judgment, and is therefore appropriate under Federal Rule of Civil Procedure 59(e). For the reasons discussed below, the Motion is denied.

## I. STANDARD OF REVIEW

Rule 59(e) permits a Court to alter or amend a judgment on timely motion by a party. Fed. R. Civ. P. 59(e). "Rule [59(e)] was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted). Accordingly, the Court may amend the judgment in its discretion where there has been an intervening change in the controlling law, new evidence that was previously unavailable has come to light, or the Court sees a need to correct clear error or prevent manifest injustice. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id*. However, motions to alter or amend the judgment pursuant to Rule 59(e) "are regarded with disfavor. . . [and are] 'not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing.'" *Kerber*

---

[1] There are three other motions currently pending before the Court: (1) BNSF's Renewed Motion for Judgment as a Matter of Law (ECF No. 209); (2) BNSF's Motion for New Trial (ECF No. 210); and (3) Fresquez's Second Motion for Attorneys' Fees (ECF No. 232). The Court will resolve these motions by way of separate orders.

2

*v. Qwest Group Life Ins. Plan*, 727 F. Supp. 2d 1076, 1076 (D. Colo. 2010) (quoting *Servants of the Paraclete*, 204 F.3d at 1012).

## II. ANALYSIS

BNSF argues that the Court misapprehended the facts, law, or BNSF's position in six ways. The Court will address each in turn.

### A. Availability of Comparable Positions

BNSF first argues that the Court premised its award of ten years of front pay on a "fact merely argued, not proved, by" Fresquez, namely that other railroads would not hire Fresquez because he had been fired by BNSF. (ECF No. 211 at 2.) BNSF also argues that the Court improperly placed the burden of proof on BNSF to demonstrate the availability of employment with other railroads. (*Id.*)

BNSF initially argued that Fresquez failed to mitigate damages by finding the best available alternative employment because Fresquez failed to show that other railroads would not hire him. (ECF No. 193 at 21.) BNSF had the affirmative burden to prove Fresquez's alleged failure to mitigate, *Hayes v. SkyWest Airlines, Inc.*, 2018 WL 4561266, at *5 (D. Colo. Sept. 24, 2018), but presented no evidence that Fresquez could have obtained employment with a railroad.

Moreover, even if Fresquez bore the burden to show that other railroads would not hire him, the Court finds that Fresquez presented credible evidence sufficient to sustain this (hypothetical) burden. Fresquez testified that he was rejected from a position at Union Pacific immediately after submitting his application. (ECF No. 208 at 83.) He also testified that he had applied for employment at other shortline railroads,

3

and had never received a response to his applications.  (*Id.* at 84.)  Although BNSF suggests in its reply brief that these companies were not hiring at the time of Fresquez's application, there was no such testimony at the hearing.  (*See* ECF No. 231 at 28.)

The Court found Fresquez's testimony credible.  Considering the totality of the evidence before the Court on this issue, the Court concluded in its November Order that Fresquez presented sufficient evidence that he was unable to obtain employment with a railroad.  Upon review, the Court concludes that there was a sufficient factual basis for the Court's prior finding that Fresquez could not obtain employment in the railroad industry.  The Court did not misapprehend the facts or law, and there is no need to correct a clear error or prevent manifest injustice.  Accordingly, the Court denies this portion of BNSF's Motion.

**B.     Work-Life Expectancy**

BNSF argues that the Court erred by assuming that only employment in the railroad industry was comparable employment.  (ECF No. 211 at 3.)  Alternatively, it argues that Fresquez's decision to enter the building inspection industry demonstrates that he considered building inspection to be "comparable to his former railroad work." (*Id.*)  However, Fresquez testified that he had not considered leaving BNSF because it offered good benefits, including retirement and health insurance.  (ECF No. 208 at 45–46.)  Fresquez also testified that he makes less money in his new position, does not have the support of a union, and has inferior health insurance.  (*Id.* at 86.)  Based on Fresquez's testimony, the Court did not err in concluding that Fresquez's new employment was not comparable to his position at BNSF.  Nor did the Court err in

4

concluding that Fresquez did not consider building inspection to be comparable employment, given the lower salary and inferior benefits in that line of work.

Finally, BNSF argues that Fresquez's decision in January 2018 to make a career in the building inspection industry forecloses any award of loss-of-employment compensation. (ECF No. 211 at 3.) In support, BNSF cites *United States v. Wyoming Military Department*, 2018 WL 3969555, at *16 (D. Wyo. Mar. 21, 2018). In that case, the court found that it was unreasonable to assume that the plaintiff—the manager and supervisor of the Wyoming Youth Challenge Program at the Wyoming Military Department, who had worked for that program for almost six years—would remain there for an additional 25 years, particularly because the plaintiff had looked for other job opportunities prior to any harassment in the workplace, and she stated that it was only "possible" that she would have remained with that employer for the remainder of her career. *Id.* at *1, *6, *16. The plaintiff sought comparable employment opportunities "focusing on positions in human services because of her work experience," but had difficulty finding a position. *Id.* at *6. Eventually, she decided to pursue a career in healthcare. *Id.* at *7. The court found that once the plaintiff "changed her career path to nursing, . . . it would not be equitable to require Defendant to pay her salary after that point." *Id.* at *16.

The present case is readily distinguishable from *Wyoming Military Department*. Fresquez began working at the BNSF when he was 20 years old, achieved a high level of seniority in his ten years at BNSF, and had not considered leaving BNSF prior to the events at issue in this litigation. (ECF No. 208 at 45, 49, 82.) After BNSF, Fresquez

pursued employment in a closely related industry, relying on his prior experience as a railroad inspector. Unlike the plaintiff in *Wyoming Military Department*, Fresquez's alternative employment was not a wholesale departure into an entirely unrelated field requiring a vastly different skill set and years of additional schooling or training. The Court finds that Fresquez's decision to pursue a career in building inspection does not foreclose front pay because, as discussed above, Fresquez could not find work in the railroad industry, and he found closely related work to which he could apply his current skill set. Accordingly, the Court did not misapprehend the facts or law, and therefore denies this part of BNSF's Motion.

**C.     The Make-Whole Requirement**

The goal of the statutory remedies of the FRSA is to "make the employee whole." 49 U.S.C. § 20109(e)(1). BNSF contends that the jury verdict and award of back pay and front pay "exceeds making [Fresquez] whole." (ECF No. 211 at 4.) In its initial brief on front pay, BNSF argued that the Court should not award front pay because "the damages recoveries are far more than is necessary to make Plaintiff whole." (ECF No. 169 at 10; ECF No. 211 at 4.) The Court considered BNSF's argument and, taking into account all the circumstances, determined that ten years of front pay from the date of the jury verdict would not be unreasonably speculative and would not result in a windfall to either Fresquez or BNSF. (ECF No. 193 at 18.) In the instant Motion, BNSF does not present any argument—other than its own disagreement with that conclusion—for reconsidering the decision that ten years of front pay would make Fresquez whole. BNSF has not presented any reason for reconsidering that decision, and the Court thus denies this part of BNSF's Motion.

6

### D.     Calculation of But-For Earnings

BNSF claims that the Court erred in its calculation of Fresquez's but-for earnings. (ECF No. 211 at 4–7.) BNSF explains that the Court averaged the but-for earnings projected by Fresquez's expert Jeffrey Opp and by BNSF's expert Mark Erwin, but erred because Opp's figures were nominal (inclusive of future inflation) and Erwin's figures were real (inflation adjusted). (*Id.* at 4–5.) Because Opp's figures were nominal, they were not stated in current (2019) dollar equivalents and, accordingly, were greater than the current dollar equivalents. (*Id.* at 5.) BNSF argues that this error "prejudiced BNSF and should be corrected by altering or amending the judgment." (*Id.* at 7.)

Both parties recognize that, in averaging Opp and Erwin's figures, the Court intended the "modification to be a discretionary compromise." (*Id.* at 5; ECF No. 226 at 53.) BNSF has now pointed out a potential deficiency in the calculations. Inexplicably, however, BNSF has failed to inform the Court how to rectify that alleged error, by providing inflation adjusted figures for Opp's projections, or otherwise guiding the Court to the earnings damages amount it considers to be more accurate. The Court is not an abacus operator, and will not do BNSF's damages calculations work for it. Accordingly, the Court will not alter the discretionary compromise it previously fashioned regarding Fresquez's projected but-for earnings, and the Court denies that portion of BNSF's Motion as well.

**E.     Deduction of Railroad Employee Costs**

BNSF argues that the Court improperly rejected BNSF's deduction of unreimbursable railroad employee expenses. (ECF No. 211 at 8.) In its November Order, the Court instructed the parties to submit supplemental, simultaneous briefs calculating back pay and front pay. (ECF No. 193 at 33.) The Court also advised the parties that the "supplemental briefs are **NOT** an opportunity to relitigate the Court's rulings in this Order . . . [and] the Court will not consider . . . any additional arguments that could have been raised in briefing on the instant Motion." (*Id.*)

At that point, BNSF had Opp's calculations before it, and could have raised an argument that Opp should have deducted unreimbursable railroad employee expenses. However, BNSF did not do so, and therefore the Court found that Fresquez had shown that he was entitled to his but-for earnings without a deduction for unreimbursable railroad employee expenses. Because BNSF did not raise this issue until the supplemental briefing, the Court finds that BNSF forfeited the argument. BNSF's argument that "any timing or procedural objections to BNSF's expert's testimony should be excused as chargeable to Plaintiff" (ECF No. 231 at 29) implicitly recognizes that BNSF failed to timely raise the argument when it had the opportunity to do so. The Court finds that disallowing unreimburseable railroad employee expenses does not work a manifest injustice to the Defendant, and therefore also denies this portion of BNSF's Motion.

**F.      Future Medical Benefits**

In the November Order, the Court adopted the approach used by the Fifth, Seventh, and Ninth Circuits to value lost medical benefits for back pay, namely using "out-of-pocket expenses incurred by the employee for purchasing replacement coverage or paying medical expenses that would have been covered by the employer's policy." (ECF No. 193 at 28.)  The Court found that such an amount is the "actual measure of damages, and easily calculable." (*Id.*)  For front pay, the Court noted that "[n]either party directly explains or argues how health insurance benefits should be calculated as a component of front pay." (*Id.* at 29.)  The Court then determined that the approach of the Fifth, Seventh, and Ninth Circuits is "logically inconsistent with an award of front pay, given that such expenses have not yet accrued." (*Id.*)  Accordingly, the Court surveyed the approaches of courts within the Tenth Circuit when awarding front pay, and instructed the parties to use a multiplier to determine the value of future health insurance benefits. (*Id.* at 29–30.)

BNSF argues that the Court misapprehended controlling law and BNSF's position in its valuation of future medical benefits. (ECF No. 211 at 8–10.)  While recognizing that it did not directly address or explain how to calculate future medical benefits (ECF No. 211 at 8), BNSF nonetheless argues that its "position was clear: allowing a plaintiff to recover for losses not actually sustained amounts to a 'windfall' whether the windfall occurs pre-verdict or post verdict" (*id.*).

In the November Order, the Court made a distinction between past and future medical benefits, finding that the approach of the Fifth, Seventh, and Ninth Circuit was

9

appropriate as to past medical benefits, but of limited use for future medical benefits. (ECF No. 193 at 28–30.)  At that time, the Court considered, and unambiguously rejected, using the Fifth, Seventh, and Ninth Circuit's approach for calculating future medical benefits in favor of an approach previously used by a court within the Tenth Circuit.  (*Id.* at 30.)  BNSF presents no controlling law that compels a different result.  Indeed, as the Court noted in the November Order, the Tenth Circuit has not addressed this issue, and courts within the Tenth Circuit use varying approaches.  In the absence of controlling law to the contrary, the Court will not revisit its prior ruling on this issue.

### III. CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendant BNSF's Motion for Reconsideration (ECF No. 211) is DENIED in its entirety.

Dated this 14th day of April, 2020.

BY THE COURT:

_____
William J. Martinez
United States District Judge